RUDOLPH L. EDWARDS, RECEIVER OF DURHAM WHOLESALE CATALOG CO., INC. v.
    THE NORTHWESTERN BANK; ALPHA BETA CORPORATION; EMPIRE
    PROPERTIES, INC.; VALCO, INC.; PRESIDENTIAL APARTMENTS, INC.;
    ROBERT I. LIPTON; ABE GREENBERG; AND C. PAUL ROBERTS

No. 7714SC851

(Filed 2 January 1979)

**1. Fiduciaries § 1— misapplication of funds by fiduciary—bank's knowledge or
bad faith—summary judgment improper**

   In an action by a receiver of a corporation to recover assets for the
benefit of creditors where defendant bank made a loan of $400,000 to the cor-
poration for the purpose of financing its inventory, defendant was not entitled
to summary judgment on the receiver's claim that defendant permitted the
fiduciary of the corporation to divert and misapply over $250,000 of the loan
proceeds with actual knowledge that the fiduciary was committing a breach of
his obligation, or with knowledge of such facts that defendant's action in pay-
ing certain checks amounted to bad faith, since defendant's general denial of
plaintiff's allegations that defendant's officers acted with knowledge of any
breach of fiduciary obligation or in bad faith by issuing cashiers checks to the
corporation's fiduciary in exchange for a $250,000 check drawn against the cor-
poration's account was insufficient to carry defendant's burden of establishing
with the requisite degree of certainty the nonexistence of any one or more of
the essential elements of plaintiff's claim; the peculiar nature of the request by
the corporation's fiduciary for four cashiers checks in varying amounts for the
purpose of implementing payment by the corporation to a separate corporation
in which the fiduciary was the principal of the one sum of $250,000 was in
itself sufficient to raise some question of propriety for consideration by defend-
ant's officer; and the apparent failure of defendant's officer to make inquiry
before directing that the four cashiers checks be issued could support a
reasonable inference that defendant's officer's passiveness amounted to a
deliberate desire to evade knowledge because of a belief or fear that inquiry
would disclose a defect in the transaction. G.S. 32-9.

**2. Fiduciaries § 1— bad faith defined**

   By defining "good faith" in terms of an act done honestly although
perhaps negligently, the drafters of the Uniform Fiduciaries Act implicitly
revealed their intention that the term "bad faith" requires a showing of facts
and circumstances so cogent and obvious that to remain passive would amount
to a deliberate desire to evade knowledge because of a belief or fear that in-
quiry would disclose a defect in the transaction.

**3. Fraudulent Conveyances § 3.4— assignment of note and deed of trust**

   Assignment of a note and deed of trust from a corporation to defendant
bank which agreed to forego its rights under a security agreement covering
the corporation's inventory did not constitute a fraudulent conveyance, since
assignment of the note and deed of trust was involuntary, that is, made for a
valuable consideration, and defendant did not know that the corporation was
essentially insolvent at the time of the assignment and therefore could not
have had notice of the corporation's intent to defraud creditors.

4. **Fraudulent Conveyances § 1— conveyance made with consideration—when fraudulent**

When a conveyance is made by a debtor for valuable consideration, it is fraudulent and may be set aside only when the conveyance was (1) made with the intent to defraud creditors and (2) the grantee either participated in the intent or had notice of it.

5. **Assignments for Benefit of Creditors § 1— assignment of note and deed of trust—substantial property retained—no assignment for benefit of creditors**

An assignment of a note and deed of trust by a corporation to defendant bank was not an assignment for the benefit of creditors since the corporation at the time of the assignment retained substantial property, including several hundred thousand dollars worth of inventory, and the assignment was therefore not an assignment of practically all of the debtor's property.

6. **Assignments for Benefit of Creditors § 2— assignment of note and deed of trust—over four months before general assignment—no unlawful preference**

An assignment of a note and deed of trust by a corporation to defendant bank and the transfer of cash did not constitute an unlawful preference, since the assignment and transfer in April of 1974 occurred more than four months preceding a general assignment by the corporation to its receiver in March 1976. G.S. 23-3.

7. **Joint Ventures § 1— elements**

Two factual elements are essential to a finding that a joint venture exists: (1) an agreement, express or implied, to carry out a single business venture with joint sharing of profits, and (2) an equal right of control of the means employed to carry out the venture.

8. **Joint Ventures § 1— financing institution—liquidating corporation—no joint venturers**

Defendant bank was entitled to summary judgment on plaintiff's claim that defendant became a joint venturer in the liquidation of the assets of a corporation and thereafter breached its fiduciary responsibility as such joint venturer where the evidence tended to show the execution of an inventory control agreement by means of which defendant received regular reports on the corporation's inventory, the reception by defendant of regular reports on the corporation's accounts payable activity, the exercise of a substantial degree of control over checks drawn against the corporation's checking account, and one visit by an officer of defendant to the corporation's premises to inspect its inventory, but there was no evidence of an agreement to carry out a single business venture with a joint sharing of profits and no evidence that defendant exercised an equal degree of control over the means employed by the corporation to carry out the venture.

9. **Fiduciaries § 2— financing institution—fiduciary obligation—insufficiency of evidence**

To justify the imposition of a fiduciary obligation on a party financing the affairs of a corporation, it must be shown that the financing party essentially dominated the will of its debtor; evidence in this case consisting of an inven-

tory control agreement, defendant's scrutiny of checks drawn against the corporation's account, and one visit of an officer of defendant to check on the corporation's inventory did not amount to control, domination and spoilation of the corporation's affairs.

APPEAL by the Receiver from *McKinnon, Judge*. Judgment entered 18 May 1977 in Superior Court, DURHAM County. Heard in the Court of Appeals 15 August 1978.

This appeal involves only the Receiver and the defendant The Northwestern Bank. The judgment appealed from was a summary judgment in favor of The Northwestern Bank holding that there is no genuine issue as to any material fact as to The Northwestern Bank and that it is entitled to judgment as a matter of law.

The Durham Wholesale Catalog Co., Inc. was organized in October 1973. It incurred considerable indebtedness for inventory and in April 1974 began a liquidation of all assets. Apparently substantial indebtedness by Durham Wholesale Catalog Co., Inc. remained and the Receiver was appointed, presumably at the instance of one or more creditors.

This action was instituted by the Receiver in May 1976 against The Northwestern Bank, as well as against several additional corporations and individuals, to recover assets for the benefit of creditors of Durham Wholesale Catalog Co., Inc. (Durham Wholesale). Generally the Receiver alleges conversion and misapplication of Durham Wholesale's assets and properties, fraudulent conveyances, voidable preferences, assignment for the benefit of creditors, a joint venture, and breach of fiduciary duty by The Northwestern Bank.

*Randall, Yaeger & Woodson, by John C. Randall, for the Receiver.*

*Jordan, Wright, Nichols, Caffrey & Hill, by Edward L. Murrelle and Robert D. Albergotti, for The Northwestern Bank.*

BROCK, Chief Judge.

In his appeal from the summary judgment in favor of The Northwestern Bank (Bank) the Receiver argues three propositions:

1. That the Bank failed to show that there was no genuine issue as to any material fact and that it was entitled to judgment as a matter of law with respect to the Receiver's assertion that the Bank permitted the fiduciary of Durham Wholesale to divert and misapply $250,000.00 of corporate funds with actual knowledge that the fiduciary was committing a breach of his obligation, or with knowledge of such facts that the Bank's action in paying the check amounted to bad faith. *See* G.S. 32-9.

2. That the Bank failed to show that there was no genuine issue as to any material fact and that the Bank was entitled to judgment as a matter of law with respect to the Receiver's assertion that the Bank's acceptance of an assignment of a note and deed of trust from Durham Wholesale and the transfer to the Bank of $50,813.00 by Durham Wholesale constituted either an unlawful preference, a fraudulent conveyance, or an assignment for the benefit of creditors.

3. That the Bank failed to show that there was no genuine issue as to any material fact and that the Bank was entitled to judgment as a matter of law with respect to the Receiver's assertion that the Bank became a joint venturer in the liquidation of the assets of Durham Wholesale and thereafter breached its fiduciary responsibility as such joint venturer, or alternatively that the Bank breached its fiduciary obligation arising from its control and domination of Durham Wholesale's affairs.

For the reasons hereinafter stated we affirm the trial court's grant of summary judgment with respect to the second and third propositions. We reverse the trial court's grant of summary judgment with respect to the first proposition and remand for trial upon the issues raised thereby.

[1]  1. Did the Bank show that there was no genuine issue as to any material fact and that it was entitled to judgment as a matter of law with respect to the Receiver's assertion that it permitted the fiduciary of Durham Wholesale to divert and misapply $250,813.00 of corporate funds with actual knowledge that the fiduciary was committing a breach of his obligation, or with knowledge of such facts that the Bank's action in paying the check amounted to bad faith? We answer in the negative and hold that the trial court committed error in granting summary judgment for the Bank upon this question.

According to the record on appeal before us the following was shown by the Receiver: On 9 October 1973 the organizational meeting of Durham Wholesale was held, at which time A. Greenberg was elected President and Chairman of the Board, and C. Paul Roberts was elected Vice-President. On that day 500 shares of stock were issued at $1.00 per share: 250 shares to A. Greenberg and 250 shares to C. Paul Roberts. A Pro-Forma Balance Sheet statement dated 31 October 1973 signed by Greenberg and Roberts, showing accounts payable for inventory in the sum of $615,000.00, was submitted to defendant Bank by Greenberg and Roberts. On 1 November 1973 a Certified Inventory Control Agreement was entered into between Durham Wholesale, defendant Bank, and Lawrence Systems, Inc. On 2 November 1973 the Board of Durham Wholesale authorized Greenberg to borrow $500,000.00 from defendant Bank and execute a security agreement. Both Greenberg and Roberts were active in negotiating the loan through Atkinson, City Executive of defendant Bank's Durham Branch. On 5 November 1973 Greenberg and Roberts agreed to maintain a compensating balance of $100,000.00 in either individual or corporate balances. Greenberg was known by Atkinson, of defendant Bank, to be the principal of Valco, Inc., which maintained an account with defendant Bank, and Roberts was known by Atkinson, of defendant Bank, to be the principal of Empire Properties, Inc., which maintained an account with defendant Bank. Greenberg, Roberts, and their families were known by Atkinson, of defendant Bank, to be involved in multifarious corporate operations in Durham County. By letter dated 6 November 1973 the Certified Public Accountant for Durham Wholesale wrote a letter stating that the value of inventory in the warehouse was in excess of $600,000.00; this letter was delivered to defendant Bank. On or about 6 November 1973 a Security Agreement-Floating Lien on Inventory-Variable Interest Rate agreement for a $500,000.00 line of credit to finance inventory was executed by Durham Wholesale and delivered to defendant Bank; Greenberg and Roberts signed as personal guarantors. On 6 November 1973 a Financing Statement was filed showing Durham Wholesale as the debtor and defendant Bank as creditor covering "all inventory and all inventory hereafter acquired and all additions and accessions thereto, and all proceeds of its sale or disposition." On 6 November 1973, $400,000.00 was advanced by defendant Bank to Durham Wholesale upon its note for $400,-

000.00 issued on the $500,000.00 line of credit. On 6 November 1973 Greenberg executed a Durham Wholesale check to Empire Properties in the sum of $250,000.00. On 7 November 1973, upon instructions from Atkinson, of defendant Bank, the commercial loan teller of defendant Bank issued four cashier's checks made payable to Empire Properties in exchange for the Durham Wholesale check made payable to Empire Properties. The four cashier's checks were dated 7 November 1973 and were made payable in the following sums: $50,000.00, $60,000.00, $40,000.00, and $100,000.00. The $50,000.00 check was endorsed Empire Properties by Roberts and negotiated to one James W. Tyndall who in turn negotiated it to defendant Bank. The $60,000.00 check was endorsed Empire Properties by Roberts and negotiated to defendant Bank. The $40,000.00 check was endorsed Empire Properties by Roberts and negotiated to Liberty Bank & Trust Co., Durham, by Roberts for cash. The $100,000.00 check was endorsed Empire Properties by Roberts, negotiated to Valco, Inc., endorsed Valco, Inc., by Greenberg, and negotiated to defendant Bank. From the present record it appears that $250,000.00 of the $400,000.00 loan to finance inventory may have been immediately applied to uses other than that for which it was intended, and the general creditors of Durham Wholesale were faced with a $400,000.00 lien on Durham Wholesale's inventory without corresponding assets in Durham Wholesale with which to pay general creditors. It also appears from the present record that Empire Properties was a corporation dealing in real estate and not in inventory supplies.

In its motion for summary judgment defendant Bank stated it was relying upon "the deposition of the plaintiff heretofore taken on October 15, 1976, and upon the affidavit of Fenton S. Cunningham submitted herewith." The deposition of the plaintiff taken on October 15, 1976, is not included in the record on appeal. We, therefore, conclude that it was of no value in establishing defendant Bank's claim to summary judgment. The affidavit of Cunningham, a Vice-President of defendant Bank, constitutes no more than a general denial of knowledge on the part of defendant Bank of any improper use of the proceeds of the $400,000.00 loan which was made to Durham Wholesale for the purpose of financing its inventory.

Although the issues discussed under this first proposition presented on appeal are not clearly alleged in the complaint, it appears that the parties addressed it both on the motion for summary judgment and on this appeal without objection. We will therefore assume for purposes of this appeal that the complaint has been amended by consent to allege the issues discussed hereunder.

North Carolina General Statutes, Section 32-9 provides:

"If a check is drawn upon the account of his principal in a bank by a fiduciary who is empowered to draw checks upon his principal's account, the bank is authorized to pay such check without being liable to the principal, *unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing such check, or with knowledge of such facts that its action in paying the check amounts to bad faith.* If, however, such a check is payable to the drawee bank and is delivered to it in payment of or as security for a personal debt of the fiduciary to it, the bank is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the check." (Emphasis added.)

Under the provisions of this statute the defendant Bank would be liable to the principal (Durham Wholesale) if the defendant Bank paid the 6 November 1973 check for $250,000.00 drawn on the principal's account by Greenberg, the fiduciary, with actual knowledge that the fiduciary was committing a breach of his obligation as fiduciary in drawing such check for a purpose other than to finance the principal's inventory, or if defendant Bank paid said check with knowledge of such facts about the payee or the purpose of the check that its action in paying the check amounted to bad faith. Under the provisions of G.S. 32-9 the existence of actual knowledge, or the existence of knowledge of such facts that its action in paying the check amount to bad faith, or both, would render defendant Bank liable to the principal (Durham Wholesale). The plaintiff Receiver in this case stands in the place of the principal.

[2] Determining whether or not a bank acted with "actual knowledge" that a fiduciary was committing a breach of his obligation presents little difficulty. But determining whether an act was

done "in bad faith" as plaintiff here contends poses a more difficult question. Nowhere in the Uniform Fiduciaries Act, of which G.S. 32-9 is a part, is the term bad faith defined. G.S. 32-2(b) does, however, provide that "[a] thing is done 'in good faith' within the meaning of this Article when it is in fact done honestly, whether it be done negligently or not." A showing of mere negligence is clearly not sufficient to establish liability. It is also worth noting in attempting to define the bad faith standard that the very purpose of the Uniform Fiduciaries Act was to relax the common law standard of care owed by banks to principals when dealing with their fiduciaries. 7A Uniform Laws Annotated 128 (West 1978). By defining "good faith" in terms of an act done honestly although perhaps negligently, we think the drafters of the Act implicitly revealed their intention that the term "bad faith" requires a showing of some indicia of dishonest conduct or a showing of facts and circumstances ". . . so cogent and obvious that to remain passive would amount to a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction." *General Ins. Co. of America v. Commerce Bank of St. Charles*, 505 S.W. 2d 454, 458 (1974). In *Davis v. Pennsylvania Co. for Ins. on Lives and Granting Annuities*, 337 Pa. 456, 460, 12 A. 2d 66, 69 (1940), the court in considering another section of the Uniform Fiduciaries Act imposing the same standard of liability set forth in G.S. 32-9 discussed the distinction between negligence and bad faith as follows:

> "At what point does negligence cease and bad faith begin? The distinction between them is that bad faith, or dishonesty, is, unlike negligence, wilful. The mere failure to make inquiry, even though there be suspicious circumstances, does not constitute bad faith (*Union Bank & Trust Co. v. Girard Trust Co.*, 307 Pa. 488, 500, 501, 161 A. 865), unless such failure is due to the deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a vice or defect in the transaction,—that is to say, where there is an intentional closing of the eyes or stopping of the ears."

We think this distinction strikes the proper balance with respect to the liability of a bank for a fiduciary's breach of his obligation.

By the evidence he produces in support of his motion, a defendant moving for summary judgment must first establish

that there is no genuine issue as to any material fact and second that he is entitled to judgment as a matter of law. N.C.R. Civ. P. 56(c). It is on this initial burden borne by the defendant-movant that we focus our analysis. Although there is not complete agreement on the weight of this initial burden, *see* Louis, M. *Federal Summary Judgment Doctrine: A Critical Analysis*, 83 Yale L.J. 745 (1974), we have held that a defendant-movant must produce evidence of the necessary certitude which negatives any one or more of the essential elements of plaintiff's claim. *Tolbert v. Great Atlantic Pacific Tea Co.*, 22 N.C. App. 491, 206 S.E. 2d 816 (1974). Until the movant meets this initial burden, the opposing party, even though he may bear the burden of proof at trial, need not respond with evidence showing further support for his claim and a grant of summary judgment in defendant's favor is improper. The defendant-movant has a particularly difficult burden to carry in a case, such as this one, in which the plaintiff's claim is dependent on proof that the defendant acted with a particular state of mind, *e.g.*, cases involving fraud, conspiracy, or bad faith. *See Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392 (1976); 6 *Moore's Federal Practice*, pt. 2, ¶56.17 [41.-1], p. 930 (1976). In such a case defendant-movant, in order to meet his initial burden on a motion for summary judgment, must at least produce more than a mere denial by affidavits that he acted with the state of mind alleged by plaintiff. His evidence in support of his motion must again be of the necessary certitude as to negative any one or more of the essential elements of plaintiff's claim.

[1]   In this instance defendant Bank stated in its motion for summary judgment that it was relying on the affidavit of one of its officers, Fenton S. Cunningham. Cunningham's affidavit, as we have noted earlier, amounted to no more than a general denial of plaintiff's allegations that defendant Bank's officers acted with knowledge of any breach of fiduciary obligation or in bad faith by issuing the cashiers checks to Greenberg in exchange for the $250,000.00 check drawn against Durham Wholesale's account. The peculiar nature of the request by Greenberg (of Durham Wholesale) for four cashier's checks in varying amounts for the purpose of implementing payment by Durham Wholesale to Empire Properties of the one sum of $250,000.00 was in itself sufficient to raise some question of propriety for consideration by Atkinson (of defendant Bank). His (Atkinson's) apparent failure to

make inquiry before directing that the four cashier's checks be issued could support a reasonable inference that his (Atkinson's) passiveness amounted to a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction. We think a mere general denial of plaintiff's allegations, particularly in a case such as this one in which state of mind is the essential element, fails to carry the defendant-movant's initial burden of establishing with the requisite degree of certainty the nonexistence of any one or more of the essential elements of plaintiff's claim. The grant of summary judgment in favor of defendant Bank on the issue of its liability for the breach of fiduciary obligation by the officers of Durham Wholesale was, therefore, improper.

[3]   2. Did the Bank show that there was no genuine issue as to any material fact and that it was entitled to judgment as a matter of law with respect to the Receiver's assertion that the Bank's acceptance of an assignment of a note and deed of trust from Durham Wholesale and the transfer to the Bank of $50,813.00 by Durham Wholesale constituted either a fraudulent conveyance, an unlawful preference or an assignment for the benefit of creditors?

According to the record on appeal the following was shown by the Receiver with respect to this allegation: On 29 March 1974 Durham Wholesale transferred the title to its land and building to Alpha Beta Corporation, which at the time of the transfer owned all of the shares of Durham Wholesale, and in which A. Greenberg served as an officer. On 19 April 1974 Alpha Beta Corporation gave to Durham Wholesale a note and purchase money deed of trust in the amount of $151,778.00 in payment for the transferred property. On 19 April 1974 the Bank was informed by the officers of Durham Wholesale that they had decided to liquidate the company's inventory because they felt they were not familiar enough with the catalog business to compete effectively. The security agreement covering the inventory of Durham Wholesale authorized the Bank in such an event to declare the $400,000.00 note immediately payable and to pursue its rights under the Uniform Commercial Code, including the right to repossess the inventory collateral. Upon being advised that the proceeds from the liquidation sale would be deposited in Durham Wholesale's checking account and applied to the satisfaction of claims of general creditors and the $400,000.00 indebtedness to the Bank, the Bank agreed to

forego its rights under the security agreement and rely on the proceeds of the liquidation sale for satisfaction of Durham Wholesale's debt. As a condition to its relinquishment of those rights, however, the Bank made three demands: that Durham Wholesale assign to it the note and deed of trust given to Durham Wholesale by Alpha Beta Corporation; that it be allowed to debit Durham Wholesale's account in the amount of $50,813.00 to be applied to reduction of the $400,000.00 indebtedness; and that Greenberg, Roberts and their wives give personal guarantees on the balance of the loan. Durham Wholesale's officers complied with these demands and then proceeded to liquidate the inventory, from the proceeds of which substantial payments were made both to general creditors of Durham Wholesale and to the Bank.

General Statute Number 39-15 provides for the setting aside of fraudulent conveyances made by a debtor. In *Aman v. Walker*, 165 N.C. 224, 81 S.E. 162 (1914), the court observed that a distinction must be drawn between voluntary conveyances (those not made for a valuable consideration) and involuntary conveyances (those made for a valuable consideration). An involuntary conveyance is void only when it is ". . . made with the actual intent to defraud creditors on the part of the *grantor*, participated in by the *grantee* or of which he had notice. . . ." *Id.* at 227-28, 81 S.E. at 164.

The Bank contends, and we agree, that the assignment of the note and deed of trust by Durham Wholesale was involuntary. Valuable consideration is deemed to have been given by the transferee when he suffers a legal detriment and the transferor receives a corresponding benefit. 37 C.J.S., Fraudulent Conveyances, § 140, p. 964. It is an uncontroverted fact that the Bank relinquished its right to declare Durham Wholesale in default and resort to repossession of the inventory collateral. The corresponding benefit which inured to Durham Wholesale was the right to liquidate its inventory and, by doing so, to pay off its other creditors as well as the Bank. Furthermore, a deed of trust or a mortgage made to secure an existing debt is a conveyance for a valuable consideration. *Fowle v. McLean*, 168 N.C. 537, 84 S.E. 852 (1915); *Potts v. Blackwell*, 56 N.C. 449 (1857). The same principle would apply when the debtor assigns as security for an existing debt a note and deed of trust which he holds. That the existing debt was already amply secured may in some instances

result in a finding that the assignment or transfer was fraudulent is true. 37 C.J.S., Fraudulent Conveyances, § 155(d), p. 979. But so long as the debtor is not insolvent, and the property conveyed or assigned is not worth materially more than the debt, the creditor may take further security, particularly where the transfer is accompanied by a release of rights formerly held in other security. *Citizens Bank of Pleasant Hill v. Robinson*, 342 Mo. 697, 117 S.W. 2d 263 (1937). Given the Bank's agreement to relinquish its rights with respect to the inventory collateral, we think it was entitled to demand other security for Durham Wholesale's debt and should be deemed to have given valuable consideration for the assignment.

[4] According to *Aman* when a conveyance is made by a debtor for valuable consideration, it is fraudulent and may be set aside only when the conveyance was (1) made with the intent to defraud creditors, and (2) the grantee either participated in the intent or had notice of it. The record is devoid of any evidence of Durham Wholesale's actual intent to defraud its creditors by transferring the note and deed of trust. Intent to defraud creditors may be presumed, however, when the debtor does not retain property sufficient to pay his then-existing debts. *See Everett v. Carolina Mortgage Co.*, 214 N.C. 778, 1 S.E. 2d 109 (1938); *Cheatham v. Hawkins*, 80 N.C. 161 (1879); *Stone v. Marshall*, 52 N.C. 300 (1859). The Receiver contended the Bank had notice of Durham Wholesale's intent to defraud creditors because it knew Durham Wholesale was essentially insolvent at the time of the assignment. In support of this contention, he relied on documentary evidence, which arguably tends to show Durham Wholesale was insolvent at the time of the assignment. The principal piece of documentary evidence was a balance sheet for Durham Wholesale prepared by a public accounting firm, which showed as an asset a $290,000.00 advance to affiliates. The Receiver contends this asset actually represented sums diverted to their other corporate ventures by the officers of Durham Wholesale and that the Bank had knowledge of that fact. The Bank's uncontroverted evidence, however, shows that the balance sheet did not come into its possession until June 1974 and that prior to the assignment of the note and deed of trust the Bank had been given oral assurances of Durham Wholesale's solvency by the accounting firm. The Receiver also relied on a Dun and Bradstreet Report dated 4

March 1974, which was in the Bank's files. There is nothing in that report, however, which would have put the Bank on notice as to Durham Wholesale's financial instability. Defendant contends that other facts and circumstances known to the Bank should have put it on notice, *e.g.*, Durham Wholesale's slowness in paying its creditors, the officer's decision to liquidate the inventory, and Durham Wholesale's failure to pay any principal or interest on its loan from the Bank until more than four months after the loan was made. In the light of the other indications of financial stability of Durham Wholesale that the Bank had, these facts were not such as to justify charging the Bank with notice of Durham Wholesale's insolvency. The Bank's evidence in support of its motion for summary judgment clearly establishes it neither participated in any fraudulent intent or had notice of it. The Receiver failed to respond with any further evidence showing either participation or knowledge and the grant of summary judgment in favor of the Bank on the fraudulent conveyance issue was, therefore, proper.

Alternatively, the Receiver contended the assignment of the note and deed of trust and the transfer of the $50,813.00 should be deemed to be an assignment for the benefit of creditors and a voidable preference. It has been held pursuant to G.S. 23-1 that when an insolvent person makes an assignment of practically all his property to secure an existing debt, there being also other creditors, the transaction will be treated as if it were an assignment for the benefit of creditors and subject to the statutes relating thereto. *Odom v. Clark*, 146 N.C. 544, 60 S.E. 513 (1908); *National Bank of Greensboro v. Gilmer*, 116 N.C. 684, 22 S.E. 2 (1895). A voidable preference is the transfer or conveyance of property by a debtor ". . . within four months next preceding the registration of the deed of trust or deed of assignment in consideration of the payment of a pre-existing debt, when the grantee or transferee knows or has reasonable grounds to believe that the grantor or assignor was insolvent at the time of making such conveyance or transfer." G.S. 23-3. The statute has been held to encompass assignments as security for a pre-existing debt as well as absolute transfers. *Teague v. Howard Grocery Co.*, 175 N.C. 195, 95 S.E. 173 (1918).

[5] We think the uncontroverted facts support the grant of summary judgment in the Bank's favor on both of these contentions.

Durham Wholesale retained substantial property, including several hundred thousand dollars worth of inventory, which it liquidated and applied a substantial part of the resulting proceeds to the payment of general creditors and the Bank; the assignment was not, therefore, an assignment of practically all of the debtor's property. Since the evidence negatives the existence of this essential element of the Receiver's claim that the assignment of the note and deed of trust was in effect an assignment for the benefit of creditors, the grant of summary judgment for the Bank on this issue was proper.

[6]    There does appear to be a factual controversy with respect to Durham Wholesale's solvency at the time of the assignment and transfer of cash; nonetheless, we think summary judgment in favor of the Bank on the Receiver's voidable preference claim was properly allowed. To constitute a preference, a conveyance or assignment for security must have been made within four months next preceeding the registration of a general assignment by the debtor. Having decided that the assignment of the note itself was not an assignment for the benefit of creditors, the only date at which such an assignment conceivably took place was in March 1976 when the Receiver was appointed. The assignment of the note and deed of trust and transfer of cash having been effected in April 1974, they clearly were not made within the proscribed time period of four months. Moreover, the Bank's evidence, as we discussed *supra*, negates the Receiver's contentions that the Bank had notice of Durham Wholesale's insolvency or reasonable grounds to believe the company was not solvent at the time the note and deed of trust were assigned and the debit of Durham Wholesale's account was authorized.

3. Did the Bank fail to show that there was no genuine issue as to any material fact and that the Bank was entitled to judgment as a matter of law with respect to the Receiver's assertion that the Bank became a joint venturer in the liquidation of the assets of Durham Wholesale Catalog Co;, Inc. and thereafter breached its fiduciary responsibility as such joint venturer, or alternatively, that the Bank breached its fiduciary duty arising from its control and domination of Durham Wholesale's affairs?

[8]    The record on appeal reveals the following evidence was submitted by the Receiver in support of this contention: On 1 Novem-

ber 1973, Durham Wholesale, the Bank, and Lawrence Systems, Inc. entered into a three party Inventory Control Agreement, by means of which the Bank received regular reports on Durham Wholesale's inventory. On 19 April 1974, the officers of Durham Wholesale notified the Bank of their intention to liquidate the firm's inventory. An agreement was executed jointly by the Bank and Durham Wholesale, releasing Lawrence Systems from its inventory control obligations. During the period of liquidation, the Bank received regular reports on Durham Wholesale's accounts payable activity and exercised a substantial degree of control over checks drawn against Durham Wholesale's checking account. During the same period, the Bank also received estimated weekly expense budgets for Durham Wholesale, and an officer of the Bank made one visit to Durham Wholesale's premises to inspect its inventory.

A joint venture is defined in 46 Am. Jur. 2d, Joint Ventures, § 1, pp. 21-22 as:

". . . an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business venture for joint profit . . . with an equal right of control of the means employed to carry out the common purpose of the venture."

In *James v. Atlantic and East Carolina RR Co.*, 233 N.C. 591, 65 S.E. 2d 214 (1951), the Court held that whether a joint venture exists has to be determined from the facts of each particular case. Applying that rule in *Pike v. Wachovia Bank and Trust Co.*, 274 N.C. 1, 161 S.E. 2d 453 (1968), the court held that on the facts of that case a joint venture did not exist. The court reached its conclusion on grounds that, ". . . each could not direct the conduct of the others" and because there was not ". . . an undertaking attended with risk by which defendants jointly sought a profit." *Id.* at 10, 161 S.E. 2d at 461.

[7] Analysis of both general and North Carolina law reveals that two factual elements are essential to a finding that a joint venture exists. There must be (1) an agreement, express or implied, to carry out a single business venture *with joint sharing of profits*, and (2) an *equal right of control* of the means employed to carry out the venture.

[8]   Taking all of the Receiver's factual allegations as true, including his assertion that subsequent to the decision to liquidate the Bank exercised the right of prior approval on all checks drawn on Durham Wholesale's account, we think the Bank was entitled to judgment as a matter of law on this issue. The evidence fails to show there was an agreement, express or implied, to carry out a single business venture with a joint sharing of profits. No evidence was presented to show that the Bank was entitled to or received anything more than repayment of the sums loaned and the normal rate of interest.

The Receiver contends the factual situation presented is similar to *In re Simpson*, 222 F. Supp. 904 (M.D.N.C. 1963), in which a homebuilder and a mortgage company were held to be joint venturers. Whether a lender becomes a joint venturer with its debtor is, however, a question that must be determined on the particular facts of each case. In 46 Am. Jur. 2d, Joint Ventures, § 25, p. 46, it is stated:

"Although one party's contribution to a joint venture may be to provide the funds necessary to finance it, an agreement to finance a scheme or operation does not necessarily constitute the lender a joint venturer with the borrower; and this is true, even though the profits resulting from the venture are to be divided between the operator and the person advancing the money, where the lender has no control or interest in the scheme itself beyond such right to a share of the profits."

In this respect, the evidence fails to show the Bank exercised an equal degree of control over the means employed by Durham Wholesale to carry out the venture. Although the Bank relinquished its right to repossess the inventory collateral, it nonetheless retained a security interest in the inventory and its proceeds. The control exercised by the Bank that the Receiver contends made the Bank a joint venturer with Durham Wholesale was a normal incident of the Bank's efforts to protect its security interest. It certainly did not amount to equal control of the means employed to carry out the venture.

Moreover, we note that G.S. 25-9-317 provides: "The mere existence of a security interest or authority given to the debtor to dispose of or to use collateral does not impose contract or tort liability upon the secured party for the debtor's acts or

omissions." To hold on these facts that a secured lender became a joint venturer with its debtor would seriously disrupt the carefully constructed system of secured financing.

[9]   On the basis of the same evidence he presented to support his contention that the Bank and Durham Wholesale were joint venturers, the Receiver contended a fiduciary duty on the part of the Bank arose by virtue of the Bank's exercise of control over Durham Wholesale's affairs. In support of this contention he relies on *Taylor v. Standard Gas & Electric Co.*, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939). In *Taylor* the Court held that a parent corporation that had completely dominated the affairs of its subsidiary owed a fiduciary duty to the shareholders of the subsidiary. The concept of fiduciary obligation arising from outside control of the affairs of a corporation has been extended to include control of a corporation's affairs by a financing party. *In re Process-Manz Press, Inc.*, 236 F. Supp. 333 (N.D. Ill. 1964), *rev'd on other grounds*, 369 F. 2d 513 (7th Cir. 1966), *cert. denied*, 386 U.S. 957, 87 S.Ct. 1022, 18 L.Ed. 2d 104 (1967). In that case the claims of a corporation's financier were subordinated to the claims of general creditors based on a finding that the evidence clearly established the financier's *domination* of the affairs of the debtor corporation.

From our study of the cases the Receiver relies on in support of this contention, it is clear that the fiduciary duty arises only when the evidence establishes that the party providing financing to a corporation completely dominates and controls its affairs. We do not find any evidence in the record before us that would justify the imposition of such a fiduciary obligation on the Bank. The evidence the Receiver relied upon in support of this contention, *i.e.*, the Inventory Control Agreement, the Bank's scrutiny of checks drawn against Durham Wholesale's account, and the one visit of an officer of the Bank to check on Durham Wholesale's inventory, simply does not amount to control, domination and spoilation of Durham Wholesale's affairs. To justify the imposition of a fiduciary obligation on a party financing the affairs of a corporation, it must be shown that the financing party essentially dominated the will of its debtor. *In re Prima Co.*, 98 F. 2d 952 (7th Cir. 1938), *cert. denied*, 305 U.S. 658, 59 S.Ct. 357, 83 L.Ed. 426 (1939). For the foregoing reasons, the grant of summary judgment

in the Bank's favor on the joint venture claim and the allegations of breach of fiduciary obligation is affirmed.

The judgment of the court below granting the Bank's motion for summary judgment is reversed with respect to the Receiver's assertion that the Bank committed a breach of its obligation by permitting the officers of Durham Wholesale to divert and misapply $250,000.00 of corporate funds; the judgment is otherwise affirmed.

Affirmed in part; reversed in part; and remanded.

Judges MARTIN (Robert M.) and MITCHELL concur.