Edwards v. Vanguard Fiduciary Tr. Co., 2018 NCBC 135.

STATE OF NORTH CAROLINA

FORSYTH COUNTY

PHILLIP KENNETH EDWARDS,

Plaintiff,

v.

VANGUARD FIDUCIARY TRUST COMPANY; RUSSELL JOSEPH MUTTER individually and d/b/a RJM FINANCIAL and RJM FINANCIAL LLC; and ALLEGACY FEDERAL CREDIT UNION,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 2818

**ORDER AND OPINION ON DEFENDANT ALLEGACY FEDERAL CREDIT UNION'S MOTION TO DISMISS**

1. **THIS MATTER** is before the Court on Defendant Allegacy Federal Credit Union['s] ("Allegacy") Motion to Dismiss (the "Motion"), filed on July 30, 2018. (ECF No. 15.) Allegacy moves to dismiss the sole claim asserted against it in the Complaint filed by Plaintiff Phillip Kenneth Edwards ("Plaintiff") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"). Having considered the Motion, the briefs, and the arguments of counsel at a hearing on the Motion, the Court **DENIES** the Motion.

> *Brown, Faucher, Peraldo & Benson, LLC, by James R. Faucher, for Plaintiff.*
>
> *Parker Poe Adams & Bernstein LLP, by William L. Esser IV, for Defendant Allegacy Federal Credit Union.*
>
> *Robinson, Bradshaw & Hinson, P.A., by Pearlynn Houck and Gabriel Wright, for Defendant Vanguard Fiduciary Trust Company.*

Robinson, Judge.

## I. INTRODUCTION

2. This litigation involves claims by Plaintiff arising from Defendant Russell Joseph Mutter's ("Mutter") alleged theft of Plaintiff's retirement funds. Plaintiff alleges that Vanguard Fiduciary Trust Company ("Vanguard"), the custodian of Plaintiff's retirement accounts, and Allegacy, the federal credit union where Mutter held an account, enabled Mutter to conduct and conceal his theft of Plaintiff's funds such that those Defendants, as well as Mutter, should be liable to Plaintiff for the loss of Plaintiff's retirement savings. Plaintiff's only claim against Allegacy is based on Plaintiff's contention that Allegacy is subject to liability under North Carolina's version of the Uniform Fiduciaries Act ("UFA"), N.C. Gen. Stat. § 32-1, *et. seq*. In order to be liable to Plaintiff, Allegacy must be a "bank" as defined in the UFA.

3. In the instant Motion, Allegacy does not contest the sufficiency of Plaintiff's allegations regarding Mutter's theft or Allegacy's knowledge thereof, but rather contends that Allegacy is not a "bank" subject to the UFA.

## II. FACTUAL BACKGROUND[1]

4. The Court does not make findings of fact on a motion to dismiss pursuant to Rule 12(b)(6) but only recites those factual allegations that are relevant and necessary to the Court's determination of the Motion.

5. Plaintiff is a citizen and resident of Montgomery County, North Carolina. (Compl. ¶ 1, ECF No. 2.)

---

[1] For a more complete recitation of the factual allegations regarding Plaintiff's relationship with Defendants Mutter and Vanguard, see this Court's order and opinion on Vanguard's Motion to Dismiss, (ECF No. 39), filed on December 21, 2018.

6.    Vanguard is a Pennsylvania corporation with its principal place of business in Pennsylvania.  (Compl. ¶ 3.)  Vanguard regularly conducts business in North Carolina.  (Compl. ¶ 4.)

7.    Mutter is a citizen and resident of Forsyth County, North Carolina.  (Compl. ¶ 5.)  At all times relevant to this litigation, Mutter conducted business as RJM Financial or RJM Financial LLC.  (Compl. ¶ 6.)  However, these entities were never legally organized.  (Compl. ¶ 6.)

8.    Allegacy is a federally chartered credit union which maintains its principal place of business in Forsyth County, North Carolina.  (Compl. ¶ 7.)

9.    In 2014, Plaintiff was referred to Mutter for investment advisory services.  (Compl. ¶ 8.)  As a result of Mutter's representations to Plaintiff that he had an existing relationship with Vanguard, Plaintiff hired Mutter as his investment advisor and transferred his retirement funds to accounts at Vanguard.  (Compl. ¶¶ 9, 10, 15.)  Thereafter, Mutter obtained "full agent" status on Plaintiff's Vanguard accounts (without Plaintiff's knowledge or authorization), which allowed Mutter to transfer funds out of Plaintiff's Vanguard accounts and into Mutter's own personal bank account at Allegacy.  (Compl. ¶¶ 18, 20, 25–28.)

10.    Plaintiff did not have an account at Allegacy.  (Compl. ¶ 25.)  However, Plaintiff alleges that Allegacy is liable to him under the UFA because Allegacy permitted Mutter to deposit checks designated as "RJM Financial FBO Phillip K. Edwards" and "RJM Financial c/o Phillip K. Edwards" into his bank account at Allegacy.  (Compl. ¶¶ 28–29.)  Mutter was able to complete these deposits by filling

out IRA Distribution forms in Plaintiff's name, which were approved by Vanguard and signed as "Medallion Guarantee" by an Allegacy representative. (Compl. ¶¶ 30–31.)

### III. PROCEDURAL HISTORY

11. The Court recites only those portions of the procedural history that are relevant to its determination of the Motion.

12. Plaintiff filed his Complaint on May 29, 2018. The Complaint asserts a single claim against Allegacy—for violation of the UFA. (Compl. ¶¶ 60–67.) The Complaint also asserts claims for breach of contract and breach of fiduciary duty against Vanguard and Mutter, (Compl. ¶¶ 40–45); negligence against Vanguard, (Compl. ¶¶ 50–53); and constructive fraud against Mutter, (Compl. ¶¶ 54–59).[2]

13. This action was designated as a mandatory complex business case by order of the Honorable Mark Martin, Chief Justice of the Supreme Court of North Carolina, on July 5, 2018. (ECF No. 1.) Plaintiff opposed designation. (ECF No. 10.) On July 24, 2018, after full briefing on the issue of designation, Chief Business Court Judge Louis A. Bledsoe, III overruled Plaintiff's opposition and ordered that this action be designated as a complex business case. (ECF No. 13.) Chief Judge Bledsoe assigned this action to the undersigned on the same date. (ECF No. 14.)

---

[2] Vanguard filed its own Motion to Dismiss on the four claims Plaintiff asserts against it, (ECF No. 18), which this Court decided in a separate order and opinion filed on December 21, 2018. (ECF No. 39.) On September 13, 2018, following Mutter's failure to timely respond to the Complaint, Plaintiff moved for entry of default as to Mutter. (ECF No. 26.) On October 11, 2018, after Mutter failed to appear in this action or otherwise respond to Plaintiff's motion for entry of default, the Court entered default in favor of Plaintiff against Mutter. (ECF No. 35.)

14. On July 30, 2018, Allegacy filed the Motion seeking dismissal of Plaintiff's UFA claim, arguing that Allegacy, a federal credit union, is not included within the UFA's definition of "bank" and is therefore not subject to the UFA. (Br. Def. Allegacy Fed. Credit Union Supp. Mot. Dismiss 1, ECF No. 16 ["Br. Supp. Mot."].) Plaintiff timely filed a brief in opposition to the Motion, arguing that Allegacy is included in the UFA's definition of "bank." (Pl. Br. Opp'n Def. Allegacy Fed. Credit Union Mot. Dismiss 3, ECF No. 21.) Allegacy thereafter filed a timely reply brief. (Reply Br. Def. Allegacy Fed. Credit Union Supp. Mot. Dismiss, ECF No. 22 ["Reply Br."].) The Court held a hearing on the Motion on November 15, 2018.

15. The Motion is now ripe for resolution.

### IV.    LEGAL STANDARD

16. In ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the Court reviews the allegations of the Complaint in the light most favorable to Plaintiff. The Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The Court construes the Complaint liberally and accepts all well-pleaded factual allegations as true. *See Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).

17. Our Supreme Court has noted that "[i]t is well-established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the [C]omplaint on its face reveals that no law supports the . . . claim; (2) the [C]omplaint on its face reveals the absence of

facts sufficient to make a good claim; or (3) the [C]omplaint discloses some fact that necessarily defeats the . . . claim.'" *Corwin v. British Am. Tobacco PLC*, No. 56PA17, 2018 N.C. LEXIS 1035, at *18–19 (N.C. Dec. 7, 2018) (quoting *Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (citing *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985))). This standard of review for Rule 12(b)(6) is the standard our Supreme Court "uses routinely . . . in assessing the sufficiency of complaints in the context of complex commercial litigation." *Id.* at *19 n.7.

18. The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005). The Court can also ignore a party's legal conclusions set forth in its pleading. *McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 377, 737 S.E.2d 771, 777 (2013).

## V.     ANALYSIS

19. Allegacy argues in its Motion that Plaintiff does not allege that he had any relationship with Allegacy, and in fact, Plaintiff specifically denies such a relationship by pleading that Plaintiff did not have an account at Allegacy. (Br. Supp. Mot. 2; *see* Compl. ¶ 25.) Accordingly, Allegacy contends that its only connection to this litigation is that Mutter deposited money from Plaintiff's Vanguard accounts into his personal bank account at Allegacy, which Plaintiff alleges makes Allegacy liable to him under the UFA. (Br. Supp. Mot. 2.) However, Allegacy argues that the UFA's

definition of "bank" does not include credit unions, and therefore Plaintiff's sole claim against Allegacy fails as a matter of law.  (Br. Supp. Mot. 2–3.)

20.    The Complaint alleges that Vanguard is liable to Plaintiff pursuant to N.C. Gen. Stat. § 32-8 and/or § 32-10.  (Compl. ¶ 69.)  Therefore, for purposes of analyzing the instant Motion, the Court focuses on how "bank" appears in both these statutory sections.  Section 32-8 provides, in relevant part, that:

> If a deposit is made in a bank to the credit of a fiduciary as such, the bank is authorized to pay the amount of the deposit . . . without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing the check or with knowledge of such facts that its action in paying the check amounts to bad faith.

N.C. Gen. Stat. § 32-8.

21.    Section 32-10 includes similar language:

> If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary . . . the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount . . . unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith.

*Id.* § 32-10.

22.    The UFA defines "bank" as "includ[ing] any person or association of persons, whether incorporated or not, carrying on the business of banking." *Id.* § 32-2(a).  "Person" is defined as "includ[ing] a corporation, partnership, or other association, or two or more persons having a joint or common interest." *Id.*

23. "The cardinal principal of statutory construction is that the intent of the Legislature is controlling." *State v. Fulcher*, 294 N.C. 503, 520, 243 S.E.2d 338, 350 (1978). "Statutory interpretation properly begins with an examination of the plain words of the statute." *Lanvale Props., LLC v. County of Cabarrus*, 366 N.C. 142, 154, 731 S.E.2d 800, 811 (2012) (citation and quotation marks omitted). "If the language of the statute is clear and is not ambiguous, we must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms." *Id.* (citation and quotation marks omitted). Thus, "[w]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give it plain and definite meaning, keeping in mind that nontechnical statutory words are to be construed in accordance with their common and ordinary meaning." *Williams v. Williams*, 299 N.C. 174, 180, 261 S.E.2d 849, 854 (1980) (internal citations omitted).

24. Accordingly, this Court must ascertain whether the plain language of the UFA, reading sections 32-8 and 32-10 together with section 32-2(a), demonstrates a legislative intent that a credit union, such as Allegacy, be included within those persons or entities subject to the UFA's provisions.

25. Under the plain language of section 32-2, the UFA applies to "any person, or association of persons, . . . *carrying on* the business of banking." N.C. Gen. Stat. § 32-2(a) (emphasis added). The legislature chose a very broad definition of "bank" for purposes of the UFA. It chose an equally broad definition for "person." Reading the definition of "bank" and "person" together, a single person is subject to the UFA

just as is a group of people with a joint interest, or a corporation, or an unincorporated entity. The relevant limiting device of this definition, therefore, is not *who* is subject to the UFA, but rather the *activity* that the person, or group of people, is engaged in.

26. Reading the applicable provisions of the UFA together, the unambiguous language of the statutes indicates that if, while *engaged in the business of banking*, a person, corporation, or other association, had actual knowledge that a fiduciary was breaching its obligations, or acted in bad faith by failing to discover that the fiduciary was breaching its obligations, then that person, corporation, or other association, is in violation of section 32-8 and/or section 32-10 of our General Statutes.

27. Finding that the UFA is unambiguous, this Court need not engage in judicial construction. Accordingly, the Court will not attempt to harmonize or otherwise undertake an analysis of other statutes not applicable to Plaintiff's claims.[3] Instead, the Court now determines whether Allegacy was engaged in the "business of banking" based solely on the allegations in Plaintiff's Complaint.

28. Plaintiff alleges that Mutter had a personal bank account at Allegacy. (Compl. ¶¶ 28–29.) Plaintiff further alleges that Mutter deposited checks, made out to "RJM Financial FBO Phillip K. Edwards" and "RJM Financial c/o Phillip K.

---

[3] Moreover, this Court's review of North Carolina case law reveals that there has only been one situation involving the UFA where the definition of a term, as it appears in the UFA, was subject to interpretation by our courts. *See Edwards v. Nw. Bank*, 39 N.C. App. 261, 250 S.E.2d 651 (1978). That term was "bad faith," which appears in the statutes applicable to this litigation. *Id.* at 268, 250 S.E.2d at 657. Despite the definition of "bad faith" appearing nowhere in the UFA, the *Edwards* court chose not to harmonize or analyze other statutes where the legislature defined "bad faith." *Id.* Instead, the *Edwards* court stuck to the definition that was provided for in the UFA ("good faith") and interpreted the plain meaning of "bad faith" therefrom. *Id.*

Edwards[,]" into this account. (Compl. ¶ 29.) The receipt and deposit of checks is within the common and ordinary meaning of "banking." *See, e.g.*, *Banking, Black's Law Dictionary* (10th ed. 2014) (defining banking as "the commercial activity of receiving and safeguarding others' money, paying and collecting checks . . . ."). Moreover, it is the very activity that subjects a "person" to the UFA.

29. Allegacy points out that, based on its research, no reported decision in any state or federal court anywhere in the United States has previously held that a federally chartered credit union, such as Allegacy, is subject to the UFA. (Br. Supp. Mot. 9; Reply Br. 1.) The Court notes that the obverse of this contention is also equally true based on the Court's research: no state or federal court anywhere in the United States has previously held that a federally chartered credit union, such as Allegacy, is *not* subject to the UFA.

30. Given the fact that there is a complete absence of previously-decided authority on the precise issue raised in the Motion, and given that the statute in question appears broad enough to encompass Allegacy based solely on the allegations contained in Plaintiff's Complaint, the Court concludes that the Motion should be denied at this early stage of the litigation without prejudice to being revisited upon a more complete record such as at summary judgment.

## VI. CONCLUSION

31. For the foregoing reasons, the Court **DENIES** the Motion.

**SO ORDERED**, this the 21st day of December, 2018.

/s/ Michael L. Robinson

Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases