Global Promotions Group, Inc. v. Danas Inc., 2012 NCBC 38.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 11756

GLOBAL PROMOTIONS GROUP, INC., a )
North Carolina Corporation; FRED and )
SARA HODGES, individually and d/b/a )
GLOBAL PROMOTIONS GROUP; SDW, )
INC., a Georgia Corporation and SANDRA )
WARREN, individually and d/b/a )
SIGNATURES CUSTOM ADVERTISING, )
                        Plaintiffs )
                        )
                v. )
                        )
DANAS INCORPORATED, a North Carolina )
Corporation; COLLEEN FUTRELL, )
individually; RICHARD FUTRELL, )
individually; MARTHA DOMINICK, )
individually and BRANCH BANKING & )
TRUST COMPANY, a North Carolina )
Corporation, )
                    Defendants )

**OPINION AND ORDER
ON MOTION TO DISMISS**

THIS CAUSE, designated a mandatory complex business case by Order of the

Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-

45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S.");

and assigned to the undersigned Chief Special Superior Court Judge for Complex

Business Cases, comes before the court upon Defendants Martha Dominick and

Branch Banking & Trust Company's Motion to Dismiss ("Motion"), pursuant to Rule

12(b)(6), North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, after considering the Motion, briefs in support of and opposition to the Motion and other appropriate matters of record, CONCLUDES that the Motion should be GRANTED, for the reasons stated herein.

*Bryant Duke Paris III, PLLC, by Bryant Duke Paris III, Esq. for Plaintiffs.*

*Poyner & Spruill, LLP, by David Dreifus, Esq. and Eric P. Stevens, Esq. for Defendant Branch Banking & Trust Company.*

*Hartzell & Whiteman, LLP, by Andrew O. Whiteman, Esq. for Defendant Martha Dominick.*

Jolly, Judge.

I.

PROCEDURAL HISTORY

[1]     On or about July 28, 2011, Plaintiffs Global Promotions Group, Inc. ("Global"), Fred Hodges, Sara Hodges, SDW, Inc. ("SDW") and Sandra Warren ("Warren") filed their Complaint against Defendants Danas Incorporated ("Danas"), Colleen Futrell, Richard Futrell, Martha Dominick ("Dominick") and Branch Banking & Trust Company ("BB&T") (collectively, Dominick and BB&T will be referred to as "Bank Defendants").

[2]     The Complaint alleges the following causes of action ("Claim(s)") against Dominick and/or BB&T: Claim Nine – Breach of Fiduciary – Dominick; Claim Ten – Negligence – Dominick and BB&T; Claim Eleven – Respondeat Superior/Vicarious Liability – BB&T; Claim Twelve – Breach of Contract – BB&T; Claim Thirteen – Unjust Enrichment – Dominick and BB&T and Claim Fourteen – Accounting – BB&T.

[3]     On October 17, 2011, Bank Defendants filed the Motion, which seeks dismissal of all Claims alleged against both of them.

[4]     The court has reviewed all materials relative to the Motion, and the Motion is ripe for determination.[1]

## II.

## FACTUAL BACKGROUND

Among other things, the Complaint alleges that:

[5]     Global is a corporation organized and existing under the laws of North Carolina, with its principal place of business in Rocky Mount, North Carolina.[2] Global is a specialty advertisement business, and Fred and Sara Hodges are the principals of Global.[3]

[6]     SDW is a corporation organized and existing under the laws of Georgia, with its principal place of business in Woodstock, Georgia.  Warren is the majority owner of SDW, d/b/a Signatures Custom Advertising ("Signatures").[4] Similar to Global, Signatures is also a specialty advertising business.

[7]     Danas is a corporation organized and existing under the laws of North Carolina, with its principal place of business in Cary, North Carolina.  Susan Johnson ("Johnson") is the majority owner of Danas.[5] At times material, it appears that, among other things, Danas offered accounting services to its clients.

[8]     At all times relevant to this action, Colleen Futrell was employed as a bookkeeper for Danas.  Colleen Futrell was married to Richard Futrell, who was the

---

[1] The Motion has been fully briefed by both parties. Pursuant to Rule 15.4 of the General Rules of Practice and Procedure for the North Carolina Business Court ("BCR"), the court elects decide the Motion on the pleadings and briefs, without hearing or oral argument.
[2] Compl. ¶ 1.
[3] *Id.* ¶¶ 2, 13.
[4] *Id.* ¶¶ 3-4.  There is an apparent inconsistency between the initial case caption and paragraph 3 of the Complaint with regard to whether Warren or SDW does business as Signatures.  For purposes of this Opinion and Order, the court has tracked the allegations of paragraph 3 in this regard.
[5] *Id.* ¶ 5.

webmaster and administrator of the software and computer system used by Danas to provide accounting and operational services to Plaintiffs.

[9]     In November 2001, Fred and Sara Hodges orally contracted with Danas to run Global's day-to-day business operations and handle accounting functions for Global.[6]  The duties entrusted to Danas included order processing, vendor payments, payments of Global's business expenses, Global's collections and distributions to Global.[7]

[10]    At the same time, Global opened a deposit account with BB&T because Danas had an existing relationship with BB&T.[8]  Danas was given authority by Global, among other things, to deposit funds into Global's BB&T account, pay Global's vendors, pay Global's expenses and pay commissions to Global.[9]

[11]    Similarly, in January 2002, Warren orally contracted with Danas to run Signatures' day-to-day operations.  Signatures orally agreed that Danas would be responsible for Signatures' order entries, invoicing, accounts payable, accounts receivable, balancing monthly bank statements and providing monthly reports.

[12]    In March 2002, Warren opened a BB&T account for Signatures in Roswell, Georgia and gave signature authority on the accounts to Johnson.  In May 2002, Warren and Johnson went to the Cary, North Carolina main branch of BB&T ("Cary Branch") and signed a signature card, giving Johnson signature authority to administer the Signatures' BB&T account.

---

[6] *Id.* ¶ 13.
[7] *Id.*
[8] *Id.* ¶ 14.
[9] *Id.* ¶ 16.

[13]    In June and July 2003, Johnson revised the signature cards for Plaintiffs' BB&T accounts, which effectively transferred ownership and control of Signatures and Global's accounts to Danas.[10]

[14]    Dominick was an employee of BB&T at the Cary Branch, and she worked with Johnson and Colleen Futrell on a day-to-day basis as the BB&T representative for Plaintiffs' accounts.[11]

[15]    Beginning in 2008, the principals of Signatures and Global began discovering various discrepancies in their accounts that were controlled by Danas.[12]  In short, Signatures and Global eventually discovered that Danas had caused unauthorized wire transfers to occur from the Signatures and Global accounts at BB&T. It was also discovered that Danas allowed the negotiation and deposit of forged and unauthorized checks from the Signatures and Global BB&T accounts into Danas' accounts to pay unauthorized expenses, including personal expenses of Johnson and Colleen Futrell.[13]

[16]    Bank Defendants provided "aid and assistance" to Danas by allowing the various above-mentioned unauthorized transactions to occur.[14]

[17]    In total, acting by and through Johnson and Colleen and Richard Futrell, Danas caused the embezzlement of over $300,000 from Signatures and Global's BB&T accounts.[15]

---

[10] *Id.* ¶¶ 24-25.  The only apparent effect of Johnson's revision to said signature cards was to change the name on the accounts.
[11] *Id.* ¶ 8.  The Complaint does not allege specifically that Dominick facilitated the opening of the Global or Signatures' accounts at the Cary Branch; it also does not allege that Dominick created bank signature cards for those accounts.
[12] *See id.* ¶¶ 26-90.
[13] *Id.* ¶¶ 46, 88-89.
[14] *Id.*
[15] *Id.*

III.

DISCUSSION

A.

Motion to Dismiss

[18]     Plaintiffs' Claims against Bank Defendants are based largely on the theory that Bank Defendants breached a duty owed to Plaintiffs, under which theory Bank Defendants should have discovered and prevented unauthorized transactions initiated by Danas to embezzle money from Plaintiffs' BB&T accounts.

[19]     Bank Defendants contend that such Claims should be dismissed because Plaintiffs have failed to allege facts that would give rise to a legal duty on the part of Bank Defendants to prevent Danas from writing unauthorized checks and initiating unauthorized electronic fund transfers from Plaintiffs' BB&T accounts.[16]

[20]     Dismissal of an action pursuant to Rule 12(b)(6) is appropriate when the complaint fails to state a claim upon which relief can be granted.

[21]     In deciding a Rule 12(b)(6) motion, the well-pleaded allegations of the complaint are taken as true and admitted, but conclusions of law or unwarranted deductions of facts are not admitted.  *Sutton v. Duke*, 277 N.C. 94, 98 (1970).

[22]     A complaint fails to state a claim upon which relief can be granted when either (a) the complaint on its face reveals that no law supports the plaintiff's claim, (b) the complaint on its face reveals the absence of facts sufficient to make a good claim or (c) some fact disclosed in the complaint necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986).  However, a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless (a) it

---

[16] Mem. Supp. Dominick BB&T's Mot. Dismiss ("Defs. Memo") 5-7.

does not give sufficient notice to the defendant of the nature and basis of the plaintiff's claim or (b) it appears beyond a reasonable doubt that the plaintiff could not prove any set of facts in support of his claim that would entitle him to relief. *Sutton*, 277 N.C. at 108.

B.

North Carolina's Uniform Fiduciaries Act

[23]    As a threshold matter, Bank Defendants contend that all of Plaintiffs' Claims asserted against them are barred by North Carolina's Uniform Fiduciaries Act ("UFA"),[17] which "relax[es] the common law standard of care owed by banks to principals when dealing with [the principals'] fiduciaries." *Edwards v. Northwestern Bank*, 39 N.C. App. 261, 268 (1979); *see also* G.S. 32-9.

[24]    Under the UFA, a bank is liable to its depositor for checks drawn by the depositor's fiduciary[18] only if "[(a)] the bank pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing such check, or [(b)] with knowledge of such facts that its action in paying the check amounts to bad faith."[19] G.S. 32-9. "'The mere failure to make inquiry, even though there be suspicious circumstances, does not constitute bad faith, unless such failure is due to the deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a vice

---

[17] *Id.*

[18] Under the UFA, the term "fiduciary" is defined to "include[] a trustee under any trust, expressed, implied, resulting or constructive, executor, administrator, guardian, conservator, curator, receiver, trustee in bankruptcy, assignee for the benefit of creditors, partner, agent, officer of a corporation, public or private, public officer, or any other person acting in a fiduciary capacity for any person, trust or estate." G.S. 32-2(a).

[19] The term "bad faith" is not defined in the UFA. However, the UFA defines an action or thing as being done in "good faith" when "it is in fact done honestly, whether it be done negligently or not." G.S. 32-2(b). Based on the UFA's definition of "good faith," it is evident that to support liability under the statute, it is not enough to allege that a bank acted negligently in dealing with a principal's fiduciary. *Edwards*, 39 N.C. App. at 268.

or defect in the transaction, – that is to say, where there is an intentional closing of the eyes or stopping of the ears.'" *Edwards*, 39 N.C. App. at 268 (quoting *Davis v. Penn. Co. for Ins. on Lives and Granting Annuities*, 12 A.2d 66, 69 (Pa. 1940)) (citation omitted).

[25]   Pursuant to the UFA, Plaintiffs would be required to allege facts giving rise to a reasonable inference that Bank Defendants had either actual knowledge or willfully turned a blind eye to the improper actions of Danas with regard to the Signatures and Global accounts.[20]   *See Beedie v. Assoc. Bank of Ill.*, No. 10-cv-1351, 2011 U.S. Dist. LEXIS 65883 (C.D. Ill. June 21, 2011) (referring to UFA) ("Plaintiff has not pled enough facts to show that Defendant suspected the [fiduciaries] were acting improperly, nor has Plaintiff pled enough facts to show that Defendant deliberately refrained from investigating the [fiduciaries'] behavior.  Plaintiff only pleads that Defendant should have or could have known based on the [fiduciaries'] activity and accounts they had with Defendant.").

[26]   Notwithstanding the relaxed standard of care for banks under the UFA, the court need not address whether the UFA applies to the facts and circumstances of this action, in light of the court's conclusion, as discussed below, that Plaintiffs' Claims against Bank Defendants fail under the more stringent common law standards of care for banks.

---

[20] In light of the court's ruling, *infra*, it is not necessary for the court to determine whether Danas was actually a "fiduciary" of Signatures and/or Global under the UFA.

C.

### Claim Nine – Breach of Fiduciary Duty – Dominick

[27]    Plaintiffs' Claim Nine in the Complaint alleges a claim against Dominick, individually, for breach of fiduciary duties.

[28]    For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties.  *Harrold v. Dowd*, 149 N.C. App. 777, 783 (2002).  A fiduciary relationship exists when "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence."  *Id.* at 784.

[29]    To avoid dismissal of a claim for breach of fiduciary duty on Rule 12(b)(6) grounds, the claimant must allege "facts and circumstances [(a)] which created the relation of trust and confidence, and [(b)] [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff."  *Terry v. Terry*, 302 N.C. 77, 83 (1981) (quoting *Rhodes v. Jones*, 232 N.C. 547, 549 (1950)).

[30]    An ordinary relationship between a bank and its customers does not, without more, impose upon the bank any special duties to its customers.  *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61 (1992) (dismissing a claim against the bank for breach of fiduciary duty because "the record does not reveal that any kind of relationship existed between the Thompsons and BB&T beyond that of mere debtor-creditor").

[31]     Absent specific, supportive, factual allegations, the court need not accept as true general conclusory allegations of the elements of a cause of action for purposes of a motion to dismiss.  *Manning v. Manning*, 20 N.C. App. 149, 154 (1973).

[32]     Here, Plaintiffs allege that Dominick was the BB&T employee who "exercised actual control over Plaintiffs' accounts in conjunction with her daily dealings with Johnson and Futrell."[21]  Thus, Plaintiffs assert that Dominick had a "responsibility" to oversee Plaintiffs' accounts.[22]  Further, Plaintiffs argue that they placed their "special confidence" in Dominick because she was exercising actual control over their BB&T accounts.[23]  As such, Plaintiffs contend that these allegations sufficiently allege the existence of a fiduciary relationship between Dominick and themselves.

[33]     However, all banks exercise some degree of custodial control over their customers' accounts; nonetheless, banks ordinarily do not owe fiduciary duties to their customers.  *See Wells Fargo Bank, Nat'l Ass'n v. VanDorn*, 2012 NCBC 6, ¶¶ 17, 20 (N.C. Super. Ct. Jan. 17, 2012) (citing *Thompson*, 107 N.C. App. at 61) (dismissing a borrower's claim for breach of fiduciary duty against a lender bank because "the allegations do no more than describe the typical lender-borrower relationship from which no fiduciary relationship arises").  Plaintiffs' allegations here merely establish the existence of an ordinary relationship between a bank and its customers, as all banks have a responsibility to safeguard their customers' accounts.

[34]     Plaintiffs do not allege any circumstances that created a purported relationship of trust and confidence between Dominick and Plaintiffs.  In fact, there are no allegations that Dominick ever communicated or dealt with Plaintiffs in this case.

---

[21] Compl. ¶ 134.
[22] *Id.* ¶ 135.
[23] Pls. Mem. Opp'n Mot. Dismiss 10.

Instead, Plaintiffs only set forth allegations that Dominick had a "day-to-day" working relationship with Plaintiffs' alleged agents – Johnson and Colleen Futrell. These allegations are insufficient to plead the existence of a fiduciary relationship between Dominick and Plaintiffs.

[35] Accordingly, Plaintiffs have failed to state a Claim against Dominick for breach of fiduciary duty, and with regard to this Claim Nine the Motion should be GRANTED.

## D.

### Claim Ten – Negligence – Bank Defendants

[36] Plaintiffs allege that "[t]o the extent fiduciary duties were not owed . . . , duties of reasonable care were owed and breached by [the] negligence of Dominick and other BB&T employees."[24]

[37] Bank Defendants contend that Plaintiffs' negligence Claim should be dismissed because the Complaint fails to allege that Bank Defendants had notice of the facts or circumstances that would give rise to a legal duty on the part of Bank Defendants to refuse to honor written checks and electronic transactions authorized by Plaintiffs' alleged agents – Johnson and Colleen Futrell.[25]

[38] "To state a claim for common law negligence, a plaintiff must allege: [(a)] a legal duty, [(b)] breach thereof; and [(c)] injury proximately caused by the breach." *Fussell v. N.C. Farm Bureau Mut. Ins. Co.*, 364 N.C. 222, 226 (2010) (quoting *Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 325 (2006)).

---

[24] Compl. ¶ 139.
[25] Defs. Memo 11.

[39]  Plaintiffs make no allegations, aside from legal conclusions, that Bank Defendants either had knowledge or should have known that Danas and its agents were embezzling money from Plaintiffs' BB&T accounts.  In fact, the Complaint alleges that the fraudulent transactions were all effected by persons to whom Plaintiffs voluntarily gave full authority to conduct business on the accounts at issue.  Further, the allegations regarding the creation of signature cards in 2003 do not support an inference that Bank Defendants had knowledge or should have uncovered the fraudulent scheme carried out by Danas and its agents.  Plaintiffs allege that BB&T allowed Johnson unilaterally to alter signature cards to list Danas as the owner of the Global and Signatures accounts.[26]  However, Johnson already had signature authority on these accounts.[27]  Plaintiffs do not explain how changing the owner's name on the accounts was part of Danas' fraudulent scheme.  Further, the alleged embezzlement did not begin until more than a year after Johnson's revision to the signature cards.[28]  It is unclear how the changes to the signature cards in 2003 could have put BB&T on notice of a fraudulent scheme when the unauthorized transactions at issue occurred more than a year later.  As such, these allegations do not support an inference that Bank Defendants had notice of facts or circumstances that would give rise to a legal duty to refuse to honor checks or electronic transactions authorized by Danas and its agents.

[40]  Accordingly, Plaintiffs have failed to plead sufficient facts to support a Claim for negligence against Bank Defendants, and the Motion should be GRANTED with respect to said Claim Ten.

---

[26] Compl. ¶¶ 24-25.
[27] *Id.* ¶¶ 14, 22.
[28] *Id.*, Exs. 1, 2.

E.

Claim Eleven – Respondeat Superior/Vicarious Liability – BB&T

[41]    Plaintiffs also allege a Claim for respondeat superior/vicarious liability, which seeks to hold BB&T liable for the alleged breach of fiduciary duty and negligence of Dominick.  As mentioned above, Plaintiffs have failed to state Claims for either breach of fiduciary duty or negligence, and as such, Claim Eleven is not supported by its allegations.  Accordingly, the Motion as to Claim Eleven should be GRANTED.

F.

Claim Twelve – Breach of Contract – BB&T

[42]    Plaintiffs allege that a debtor-creditor contractual relationship existed between BB&T and Global, and BB&T and Signatures, and that BB&T breached those contracts when it allowed Johnson to revise signature cards and wrongfully convert funds from Plaintiffs' accounts.[29]

[43]    To state a claim for breach of contract, the plaintiff must allege the specific provisions of the contract that were breached.  *Polygenex Int'l, Inc. v. Polyzen, Inc.*, 133 N.C. App. 245, 252 (1999) (granting Rule 12(b)(6) dismissal where "[p]laintiff failed to allege specific provisions of the contract that were breached, alleging only that defendants' actions violated the 'letter, intent and spirit' of the Agreement").

[44]    In the present case, Plaintiffs allege in conclusory fashion that BB&T breached its contracts with Plaintiffs.[30]  However, Plaintiffs fail to reference any contract in particular, let alone a specific contractual provision, that was breached.  As such,

---

[29] *Id.* ¶¶ 147-48.
[30] *Id.* ¶ 148.

Plaintiffs' Claim Twelve fails to state a Claim for breach of contract. Accordingly, the Motion should be GRANTED as to Plaintiffs' Claim Twelve.

G.

Claim Thirteen – Unjust Enrichment – Bank Defendants

[45]    To state a claim for unjust enrichment, "a plaintiff must allege that property or benefits were conferred on a defendant under circumstances that give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 417 (2000).

[46]    Here, Plaintiffs have failed to identify any property or benefits that Bank Defendants allegedly received that they have a legal or equitable obligation to account for. Accordingly, Claim Thirteen fails to state a Claim for unjust enrichment, and the Motion should be GRANTED with respect to said Claim.

H.

Claim Fourteen – Accounting – BB&T

[47]    Similarly, Plaintiffs have not alleged any facts that would entitle them to an accounting against BB&T. Accordingly, the Motion should be GRANTED with respect to Plaintiffs' Claim Fourteen.

IV.

CONCLUSION

NOW THEREFORE, based on the foregoing, it hereby is ORDERED that:

[48]    Defendants Martha Dominick and Branch Banking & Trust Company's Motion to Dismiss is GRANTED.

[49]     All Claims alleged in this civil action against Martha Dominick and Branch Banking & Trust Company are DISMISSED.

[50]     On Wednesday, August 15, 2012, at 2:00 p.m., at the North Carolina Business Court, 225 Hillsborough Street, Suite 303, Raleigh, North Carolina, the court will conduct a status conference with all remaining parties to this action for the purpose of resolving case management issues going forward in this civil action.  On or before Wednesday, August 8, 2012, the parties shall submit a Case Management Report, pursuant to BCR 17.

This the 22nd day of June, 2012.