Edwards v. Vanguard Fiduciary Tr. Co., 2018 NCBC 134.

STATE OF NORTH CAROLINA

FORSYTH COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 2818

PHILLIP KENNETH EDWARDS,

        Plaintiff,

v.

VANGUARD FIDUCIARY TRUST
COMPANY; RUSSELL JOSEPH
MUTTER individually and d/b/a RJM
FINANCIAL and RJM FINANCIAL
LLC; and ALLEGACY FEDERAL
CREDIT UNION,

        Defendants.

**ORDER AND OPINION ON
DEFENDANT VANGUARD
FIDUCIARY TRUST COMPANY'S
MOTION TO DISMISS**

1.    **THIS MATTER** is before the Court on Defendant Vanguard Fiduciary Trust Company's ("Vanguard") Motion to Dismiss (the "Motion"), filed on August 15, 2018.  (ECF No. 18 ["Mot."].)  Vanguard seeks dismissal of all claims asserted against it in the Complaint filed by Plaintiff Phillip Kenneth Edwards ("Plaintiff") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").  Having considered the Motion, the briefs, and the arguments of counsel at a hearing on the Motion, the Court **DENIES** the Motion.

*Brown, Faucher, Peraldo & Benson, PLLC, by James Robert Faucher and Drew Brown, for Plaintiff.*

*Robinson, Bradshaw & Hinson, P.A., by Pearlynn Houck and Gabriel Wright, for Defendant Vanguard Fiduciary Trust Company.*

*Parker Poe Adams & Berstein LLP, by William L. Esser IV, for Defendant Allegacy Federal Credit Union*

Robinson, Judge.

# I. INTRODUCTION

2. This litigation involves claims by Plaintiff arising from Defendant Russell Joseph Mutter's ("Mutter") alleged theft of Plaintiff's retirement funds. Plaintiff alleges that Vanguard, the custodian of Plaintiff's retirement accounts, and Allegacy Federal Credit Union ("Allegacy"), the credit union where Mutter held an account, enabled Mutter to conduct and conceal his theft of Plaintiff's funds such that those Defendants, as well as Mutter, should be liable to Plaintiff for the loss of Plaintiff's retirement savings.

# II. FACTUAL BACKGROUND

3. The Court does not make findings of fact on a motion to dismiss pursuant to Rule 12(b)(6) but only recites those factual allegations that are relevant and necessary to the Court's determination of the Motion.

## A. The Parties

4. Plaintiff is a citizen and resident of Montgomery County, North Carolina. (Compl. ¶ 1, ECF No. 2.) Plaintiff was born on January 20, 1944 and as of the date of the filing of his Complaint, is retired. (Compl. ¶ 2.)

5. Vanguard is a Pennsylvania corporation with its principal place of business in Pennsylvania. (Compl. ¶ 3.) Vanguard regularly conducts business in North Carolina. (Compl. ¶ 4.)

6. Mutter is a citizen and resident of Forsyth County, North Carolina. (Compl. ¶ 5.) At all times relevant to this litigation, Mutter conducted business as RJM

Financial or RJM Financial LLC. (Compl. ¶ 6.) However, these entities were never legally organized. (Compl. ¶ 6.)

7. Allegacy is a federally chartered credit union which maintains its principal place of business in Forsyth County, North Carolina. (Compl. ¶ 7.)

**B. Plaintiff's Relationship with Mutter and Vanguard**

8. In 2014, Plaintiff was referred to Mutter for investment advisory services. (Compl. ¶ 8.) Mutter told Plaintiff that he was "experienced with" Vanguard, and recommended Vanguard as a "safe, secure investment." (Compl. ¶ 9.) Based on Mutter's "sales pitch," Plaintiff believed that Mutter had an existing relationship with Vanguard. (Compl. ¶ 10.) Plaintiff alleges that because of Mutter's "sales pitch," he believed that Vanguard had vetted and approved of Mutter as an investment advisor, and that Mutter was an actual or apparent agent of Vanguard. (Compl. ¶¶ 10, 12, 42.) As a result of these beliefs, Plaintiff agreed to use Mutter as an investment advisor. (Compl. ¶ 10.)

9. Plaintiff alleges that he entered into a "valid and enforceable agreement with [Mutter and Vanguard]." (Compl. ¶ 11.) Plaintiff does not incorporate by reference any written contract, nor does he specifically name the contract or specific provisions of the contract in his Complaint. Rather, Plaintiff states that pursuant to the "valid and enforceable agreement with [Mutter and Vanguard,] . . . Plaintiff invested his retirement savings with [Mutter,] and [Vanguard] agreed to provide investment services to Plaintiff and safeguard Plaintiff's retirement funds." (Compl. ¶ 11.) Plaintiff alleges that he entered into this agreement with Vanguard "directly

and through [Vanguard]'s agent [Mutter]." (Compl. ¶ 11.) Plaintiff further alleges that Vanguard received a commission or fees pursuant to this contract. (Compl.¶ 41.) The three-party agreement between Plaintiff, Mutter, and Vanguard also included an implied covenant of good faith and fair dealing. (Compl. ¶ 43.)

10. Plaintiff believed that Vanguard would "verify the credentials and trustworthiness of any purported investment advisor that sold a customer [Vanguard's] investment product, or acted as [its] agent . . . ." (Compl. ¶ 13.) No one associated with Vanguard ever told Plaintiff that Mutter did not have authority to act on its behalf, nor did Vanguard take any action to change Plaintiff's belief that Mutter was its agent. (Compl. ¶ 14.)

11. Plaintiff transferred approximately $418,692.27 of his retirement savings to Vanguard. (Compl. ¶ 15.) Plaintiff alleges that Vanguard "acknowledged the relationship of confidence and trust placed in them by Plaintiff, by issuing the disbursements [from his account at Vanguard] 'FBO Phillip K. Edwards' or 'c/o Phillip K. Edwards.'" (Compl. ¶ 16.) Plaintiff further alleges that Vanguard's name, including the words "fiduciary" and "trust" are intended to create, and in fact did create, a reasonable belief on the part of Plaintiff that Vanguard stood in a fiduciary relationship with Plaintiff. (Compl. ¶ 17.)

12. On September 24, 2014, Vanguard allowed Mutter to obtain "full agent" status to Plaintiff's accounts with Vanguard, which Mutter was able to do by submitting an electronic authorization. (Compl. ¶¶ 18, 20.) The electronic

authorization was submitted to Vanguard from an IP address that belonged to Mutter. (Compl. ¶¶ 20–21.)

13. Plaintiff never approved Mutter obtaining "full agent" status on his Vanguard accounts. (Compl. ¶ 23.) Plaintiff did not receive any information or notice from Vanguard that Mutter had been granted "full agent" status until April 4, 2018. (Compl. ¶ 22.) "Full agent" status allowed Mutter to transfer funds out of Plaintiff's Vanguard accounts without Plaintiff's knowledge or approval. (Compl. ¶ 19.) Plaintiff never agreed to, or approved of, Vanguard and/or Mutter removing money from Plaintiff's Vanguard accounts. (Compl. ¶ 23.)

14. Mutter was able to drain Plaintiff's Vanguard accounts of "substantially all funds" because of his "full agent" status. (Compl. ¶ 24.) Between 2014 and 2017, Vanguard issued several payments to Mutter without notice to or approval from Plaintiff. (Compl. ¶ 26.)

15. Not until January 2, 2018 did Plaintiff discover that Mutter had removed funds from Plaintiff's Vanguard accounts without his permission. (Compl. ¶ 38.)

C. **Deposits into Mutter's Account at Allegacy**

16. Some or all of the checks that Vanguard issued to Mutter were deposited into a personal bank account in Mutter's name at Allegacy, without notice to Plaintiff or his approval. (Compl. ¶¶ 25, 27, 28.) The payee on these checks was designated as "RJM Financial FBO Phillip K. Edwards" or "RJM Financial c/o Phillip K. Edwards." (Compl. ¶ 29.) Plaintiff alleges that Vanguard knew or should have known Mutter's intentions were to deposit the funds into his personal bank account

at Allegacy because Vanguard approved IRA Distribution forms directing the funds to Allegacy. (Compl. ¶¶ 30, 71.)

### D. Mutter's Concealment of his Actions

17. Plaintiff alleges that Mutter was able to conceal his withdrawals from Plaintiff's Vanguard accounts by sending Plaintiff forged account statements. (Compl. ¶ 35.) Plaintiff became aware that Mutter may have been providing him false account statements on or about December 7, 2017. (Compl. ¶ 37.)

## III. PROCEDURAL HISTORY

18. The Court recites only those portions of the procedural history that are relevant to its determination of the Motion.

19. Plaintiff filed his complaint on May 29, 2018 (the "Complaint"). (ECF No. 2.) The Complaint asserts four claims against Vanguard: breach of contract (Count I), (Compl. ¶¶ 40–45); breach of fiduciary duty (Count II), (Compl. ¶¶ 46–49); negligence (Count III), (Compl. ¶¶ 50–53); and violation of the Uniform Fiduciaries Act ("UFA") (Count V), (Compl. ¶¶ 70–76). The Complaint also asserts a claim for violation of the UFA against Allegacy,[1] (Compl. ¶¶ 61–67), and an additional claim for constructive fraud against Mutter,[2] (Compl. ¶¶ 54–59).

---

[1] Allegacy filed its own Motion to Dismiss on this claim, (ECF No. 15), which this Court will decide in a separate order and opinion.

[2] The Complaint asserts the First claim (breach of contract) and the Second claim (breach of fiduciary duty) against both Vanguard and Mutter. (Compl. ¶¶ 44, 47–48.) On September 13, 2018, following Mutter's failure to timely respond to the Complaint, Plaintiff moved for entry of default as to Defendant Mutter. (ECF No. 26.) On October 11, 2018, after Defendant Mutter failed to appear in this action or otherwise respond to Plaintiff's motion for entry of default, the Court entered default in favor of Plaintiff against Mutter. (ECF No. 35.)

20. This action was designated as a mandatory complex business case by order of the Honorable Mark Martin, Chief Justice of the Supreme Court of North Carolina, on July 5, 2018. (ECF No. 1.) Plaintiff opposed designation. (ECF No. 10.) On July 24, 2018, after full briefing on the issue of designation, Chief Business Court Judge Louis A. Bledsoe, III overruled Plaintiff's opposition and ordered that this action be designated as a complex business case. (ECF No. 13.) Chief Judge Bledsoe assigned this action to the undersigned on the same date. (ECF No. 14.)

21. On August 15, 2018, Vanguard filed the Motion seeking dismissal of all Plaintiff's claims asserted against Vanguard (Counts I, II, III, and V), arguing that the Complaint fails to allege sufficient facts to support such claims. (Mot. 1.)

22. Specifically, Vanguard contends that dismissal is appropriate because: (1) Plaintiff fails to identify his alleged contract with Vanguard and what provisions, if any, were allegedly breached; (2) that the account-related agreements governing Plaintiff's Vanguard accounts specifically disclaim and/or contradict the Complaint's allegations; (3) there is no fiduciary relationship between Vanguard and Plaintiff; (4) there was no duty that Vanguard breached to support Plaintiff's negligence claim; (5) the economic loss doctrine bars Plaintiff's negligence claim; and (6) Plaintiff has not alleged facts to show that Vanguard had actual knowledge of Mutter's breach of fiduciary duty or acted in bad faith to state a claim under the UFA. (Mot. 1.)

23. Plaintiff timely filed a brief in opposition to the Motion ("Brief in Opposition"). (Pl. Br. Opp'n Def. Vanguard Fiduciary Tr. Co. Mot. Dismiss, ECF No. 28 ["Pl.'s Br. Opp'n"].) Vanguard thereafter timely filed a reply to Plaintiff's Brief in

Opposition. (Vanguard Fiduciary Tr. Co. Reply Br. Supp. Mot. Dismiss, ECF No. 36 ["Reply Br."].) The Court held a hearing on the Motion on November 15, 2018.

24. The Motion is now ripe for resolution.

## IV. LEGAL STANDARD

25. In ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the Court reviews the allegations of the Complaint in the light most favorable to Plaintiff. The Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The Court construes the Complaint liberally and accepts all well-pleaded factual allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).

26. Where the pleading refers to and depends on certain documents, the Court may consider those documents without converting the motion into one for summary judgment under Rule 56. *Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009). At the same time, the Court may not consider materials that are not mentioned, contained, or attached in or to the pleading; otherwise, a Rule 12(b)(6) motion will be converted into a Rule 56 motion and subject to its standards of consideration and review. *Fowler v. Williamson*, 39 N.C. App. 715, 717, 251 S.E.2d 889, 890−91 (1979).

27. Our Supreme Court has noted that "[i]t is well-established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the [C]omplaint on its face reveals that

no law supports the . . . claim; (2) the [C]omplaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the [C]omplaint discloses some fact that necessarily defeats the . . . claim.'" *Corwin v. British Am. Tobacco PLC*, No. 56PA17, 2018 N.C. LEXIS 1035, at *18–19 (N.C. Dec. 7, 2018) (quoting *Wood v. Guilford County*, 355 N.C. 161, 166, 558, S.E.2d 490, 494 (2002) (citing *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985))). This standard of review for Rule 12(b)(6) is the standard our Supreme Court "uses routinely . . . in assessing the sufficiency of complaints in the context of complex commercial litigation." *Id.* at *19 n.7.

28. The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005). A "trial court can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the [C]omplaint." *Laster*, 199 N.C. App. at 577, 681 S.E.2d at 862. The Court can also ignore a party's legal conclusions set forth in its pleading. *McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 377, 737 S.E.2d 771, 777 (2013).

## V.      ANALYSIS

29. The Court analyzes the Motion, and Plaintiff's corresponding claims, in the order argued by Vanguard in its briefing.

### A.      Breach of Contract (Count I)

30. With respect to Plaintiff's breach of contract claim against Vanguard, Vanguard argues that the Complaint's allegations are deficient for two reasons.

First, Vanguard asserts that the Complaint neither sufficiently identifies the particular contract Plaintiff had with Vanguard, nor identifies which specific terms of that contract Vanguard allegedly breached. (Def. Vanguard Fiduciary Tr. Co. Am. Br. Supp. Mot. Dismiss 5, ECF No. 20 ["Br. Supp. Mot."].) Second, Vanguard represents that there were two written agreements governing Plaintiff's accounts with Vanguard: a Vanguard Brokerage Account Agreement, effective March 2014, and a Vanguard Traditional and Roth IRA Custodial Account Agreement, effective December 2007 and December 2014 (the "Account Agreements"), and that the Account Agreements defeat Plaintiff's breach of contract claim on its face. (Br. Supp. Mot. 5−6.) Vanguard has submitted to the Court with its briefs on the Motion purported copies of these documents.

31. As an initial matter, the Court notes that it would be improper for it to consider the Account Agreements on a Rule 12(b)(6) motion to dismiss. While a trial court may properly consider documents supplied by the defendant on a Rule 12(b)(6) motion when those documents are the subject of the plaintiff's complaint, this rule only applies where the complaint specifically refers to the documents. *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60−61, 554 S.E.2d 840, 847 (2001) (concluding that the loan agreement submitted by the defendants could be considered by the court on a Rule 12(b)(6) motion because it was "the subject of [the plaintiff's] complaint and is specifically referred to in the complaint"). Here, Plaintiff's Complaint does not specifically refer to the Account Agreements, and in his briefing on the Motion, Plaintiff disputes that the documents presented to the Court by

Vanguard are in fact the governing documents relevant to his breach of contract claim. (Pl. Br. Opp'n 4.) Accordingly, the Court does not consider the Account Agreements in deciding the Motion.

32. Turning to whether the allegations in the Complaint are sufficient to assert a valid breach of contract claim, the Court notes that North Carolina is a notice-pleading state. *See* N.C. Gen. Stat. § 1A-1, Rule 8(a) ("A pleading . . . shall contain . . . [a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief . . . ."). "Under this 'notice pleading' standard, 'a statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of *res judicata*, and to show the type of case to be brought." *Tillery Envtl. LLC v. A&D Holdings Inc.*, 2018 NCBC LEXIS 13, at \*78 (N.C. Super. Ct. Feb. 9, 2018) (quoting *Wake County v. Hotels.com, L.P.*, 235 N.C. App. 633, 646, 762 S.E.2d 477, 486 (2014)).

33. Plaintiff's breach of contract claim is subject only to the requirements of Rule 8(a). *See id.* at \*77. Therefore, the Complaint need only allege (1) the existence of a valid contract and (2) breach of the terms of that contract. *Daniel Grp., Inc. v. Am. Sales & Mktg.*, 2016 NCBC LEXIS 112, at \*9 (N.C. Super. Ct. Dec. 15, 2016) (citing *Johnston v. Colonial Life & Accident Ins. Co.*, 173 N.C. App. 365, 369, 618 S.E.2d 867, 870 (2005)). "[W]here the complaint alleges each of these elements, it is

error to dismiss a breach of contract claim under Rule 12(b)(6)." *Id.* (quoting *Woolard v. Davenport*, 166 N.C. App. 129, 134, 601 S.E.2d 319, 322 (2004) (citations omitted)).

34. Vanguard relies upon *Global Promotions Group, Inc. v. Danas Inc.*, where this Court dismissed a complaint that alleged neither a particular contract nor the specific contractual provisions that were breached. 2012 NCBC LEXIS 40, at \*17 (N.C. Super. Ct. June 22, 2012). In that case, the plaintiff alleged that a debtor-creditor contractual relationship existed between the plaintiffs and defendants, and that the defendants breached those contracts when they allowed another party to wrongfully convert funds from the plaintiffs' accounts. *Id.* at \*16–17.

35. Here, the Complaint's allegations are more specific than the assertions alleged in *Danas*. The Complaint alleges that a contract existed between Plaintiff, Mutter, and Vanguard whereby Plaintiff invested his retirement savings with Mutter and Vanguard, and Plaintiff paid a commission or fees to Mutter and Vanguard in exchange for Mutter and Vanguard's investment services and agreement to safeguard Plaintiff's retirement funds. (Compl. ¶ 41.) Although Plaintiff does not refer to any specific written contract in the Complaint, North Carolina has long recognized oral contracts. *See, e.g.*, *Williams v. Jones*, 322 N.C. 42, 48, 366 S.E.2d 433, 437 (1988); *Willis v. Russell*, 68 N.C. App. 424, 428, 315 S.E.2d 91, 95 (1984). Moreover, notice-pleading does not require a plaintiff to attach a written contract or its terms to a complaint. *Wray v. City of Greensboro*, 370 N.C. 41, 54, 802 S.E.2d 894, 903 (2017) ("[T]here is no rule which requires a plaintiff to set forth in his complaint the full contents of the contract which is the subject matter of his action or to incorporate the

same in the complaint by reference to a copy thereof attached as an exhibit as long as the complaint . . . allege[s] such a state of facts as would put defendants . . . on legal notice of the existence of the contract." (citation and quotation marks omitted)). Accordingly, the Court finds that Plaintiff has adequately alleged that a contract existed between Plaintiff and Vanguard.

36. The Complaint also alleges that Vanguard breached the contract, by, among other things, allowing Mutter to obtain "full agent" status and to access Plaintiff's account without proper authorization or oversight, by allowing Mutter to steal his retirement savings, and by issuing disbursements without Plaintiff's authorization or permission. (Compl. ¶ 44(C), (D), (F).)

37. While the allegations in Paragraph 44 are numerous, they do not identify with specificity which provisions of the contract the alleged breaches pertain to. As a result, Vanguard argues that this deficiency is similarly fatal to Plaintiff's claim as it was to the plaintiff's breach of contract claim in *Danas*.

38. Notwithstanding this Court's holding in *Danas*, the Court believes the facts of the instant case are more closely aligned to those in *Daniel Group*, 2016 NCBC LEXIS 112. In *Daniel Group*, this Court denied dismissal of a breach of contract claim where (1) the plaintiff alleged an oral contract, and (2) the allegations in the complaint, when taken as a whole, revealed that there were sufficient facts to show that the defendants breached a particular aspect of the oral contract. *Id*. at *10−11. Here, Plaintiff alleges that the contract required Vanguard to provide investment services to Plaintiff *and* to safeguard Plaintiff's funds. The Court finds that the

allegations contained in Paragraph 44(C), (D), and (F) of the Complaint suggest that Vanguard breached the safeguarding provision of the alleged contract between the parties. Therefore, under the liberal standard of Rule 8(a), the Court concludes that Plaintiff has adequately alleged a breach of contract claim. Accordingly, the Motion, to the extent it seeks dismissal of Plaintiff's First claim, is DENIED.

### B.     Breach of Fiduciary Duty (Count II)

39.     With respect to Plaintiff's breach of fiduciary duty claim against Vanguard, Vanguard asserts that North Carolina does not recognize a *de jure* fiduciary relationship between parties in the position of Plaintiff, Mutter, and Vanguard, and that the Complaint fails to allege sufficient facts to support a *de facto* fiduciary relationship. (Br. Supp. Mot. 13–14.)

40.     "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Green v. Freeman*, 367 N.C. 136, 141, 749 S.E.2d 262, 268 (2013) (citing *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001)). A fiduciary relationship can be created either by law (*de jure*), or in fact (*de facto*). North Carolina has not recognized that broker-dealers, as a matter of law, owe fiduciary duties to investors. *See NNN Durham Office Portfolio 1, LLC v. Grubb & Ellis Co.*, 2016 NCBC LEXIS 95, at *99 (N.C. Super. Ct. Dec. 5, 2016) (finding that no case law supports "the theory that managing broker-dealers owe fiduciary duties to investors," especially when considering that our "Supreme Court has declined to find a fiduciary relationship in arm's-length borrower–lender transactions").

41. Plaintiff does not dispute that North Carolina does not recognize his relationship with Vanguard as creating a *de jure* fiduciary relationship. Accordingly, the Court must determine instead whether Plaintiff has adequately alleged a *de facto* fiduciary relationship.

42. A *de facto* fiduciary relationship may arise in any case where "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Green*, 367 N.C. at 141, 749 S.E.2d at 268 (quoting *Dalton*, 353 N.C. at 651, 548 S.E.2d at 707). However, "[t]he standard for finding a *de facto* fiduciary relationship is a demanding one: 'only when one party figuratively holds all the cards . . . have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen.'" *Lockerman v. S. River Elec. Membership Corp.*, 794 S.E.2d 346, 352 (N.C. Ct. App. 2016) (quoting *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613, 659 S.E.2d 442, 451 (2008)). "Determining whether a fiduciary relationship exists requires looking at the particular facts and circumstances of a given case." *Highland Paving Co. v. First Bank*, 227 N.C. App. 36, 42, 742 S.E.2d 287, 292 (2013) (citation and quotation marks omitted).

43. The parties rely on different cases to support their respective positions. Vanguard argues that the Complaint's allegations are similar to those alleged in *Deyton v. Estate of Waters*, 2013 NCBC LEXIS 19 (N.C. Super. Ct. Apr. 25, 2013), while Plaintiff asserts that his allegations more closely align with those in *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 603 S.E.2d 147 (2004). Both cases involve

a breach of fiduciary duty claim against the respective plaintiffs' investment advisor's corporate employer. *White*, at 288, 603 S.E.2d at 152; *Deyton*, 2013 NCBC LEXIS 19, at *5−6.

44. In *Deyton*, the fully-developed record on summary judgment revealed that the plaintiffs established several investment accounts with their son-in-law, who was then a registered representative with IFG, the corporate defendant. *Deyton*, 2013 NCBC LEXIS 19, at *4. The plaintiffs had little to no interaction with any other representative at IFG other than their son-in-law. *Id.* at *6. The plaintiff father-in-law was a physician, with both undergraduate and medical degrees from Duke University. *Id.* He was also responsible for monitoring the retirement fund at his medical practice, buying and selling stocks without the use of a brokerage firm, and had a membership in one or more investment clubs that invested in securities and real estate. *Id.* at *6−7. This Court held that, based on the record before it, no fiduciary relationship existed between the plaintiffs and their son-in-law's employer, IFG. *Id.* at *29.

45. In *White*, the plaintiffs, also an older married couple who used their son as their investment advisor, had no similar level of experience or familiarity with financial matters as did the father-in-law in *Deyton*. *White*, 166 N.C. App. at 293, 603 S.E.2d at 155. There, the Complaint alleged that "'because of [the plaintiffs'] lack of expertise in financial affairs,' they relied upon [their son and his employer, Consolidated Planning] to properly manage their funds." *Id.* In light of these allegations, the Court of Appeals found that the plaintiffs had adequately alleged a

*de facto* fiduciary relationship between the corporate defendant, Consolidated Planning, and them. *Id.*

46. Here, the Complaint reveals no indication that Plaintiff was a sophisticated businessman like the plaintiff in *Deyton*. In fact, the Complaint is devoid of any facts regarding Plaintiff's background, but the Court acknowledges that such facts are not necessary to allege in a complaint. The Court in *Deyton*, decided on summary judgment, had the benefit of a fully developed record to determine whether or not the facts supported a *de facto* fiduciary relationship.

47. The Court here, of course, has a limited record, like that in *White* and also like that in this Court's decision in *Austin v. Regal Inv. Advisors*, LLC, 2018 NCBC LEXIS 3 (N.C. Super. Ct. Jan. 8, 2018). In *Austin*, like in *White*, the complaint alleged that the plaintiffs were not sophisticated investors, and that they "reposed special confidence in [the defendants] to look out for their interests because of [defendants] expertise." *Id.* at *19 (quotation marks omitted).

48. Here, the Complaint alleges that Plaintiff relied upon Vanguard's "reputation as a safe, secure investment company[,]" (Compl. ¶ 13), that Vanguard "knew or should have known that Plaintiff was placing his trust and confidence in [Vanguard] to look out for the best interests of Plaintiff[,]" (Compl. ¶ 16), and that Vanguard's very name, "including the words 'fiduciary' and 'trust' are intended to create and indeed did create a reasonable belief on the part of Plaintiff that [Vanguard] stands in a fiduciary relationship with Plaintiff, and that Plaintiff can and should place his trust and confidence in [Vanguard,]" (Compl. ¶ 17).

49.     While Plaintiff does not affirmatively allege his ignorance of financial affairs like the plaintiffs in *Austin* or *White*, the Court nonetheless determines that the Complaint's allegations, taken as a whole, are minimally sufficient at the Rule 12(b)(6) stage to plead the existence of a *de facto* fiduciary relationship. Because the Motion only asserts that Plaintiff's breach of fiduciary duty claim should be dismissed for failure to allege a fiduciary relationship, (*see* Br. Supp. Mot. 16), the Motion is DENIED as to Plaintiff's Second claim.

## C.     Negligence (Count III)

50.     With respect to Plaintiff's negligence claim, Vanguard argues that Plaintiff's tort claim is barred by the economic loss doctrine, (Br. Supp. Mot. 16–17), and that, additionally, Plaintiff has failed to allege any duty Vanguard owed to Plaintiff to monitor Mutter's actions, (Br. Supp. Mot. 18).

51.     The Court first addresses Vanguard's duty argument. Vanguard argues that "[f]or many of the same reasons the Complaint fails to allege that [Plaintiff] had a fiduciary duty relationship with [Vanguard], it likewise fails to allege that [Vanguard] owed him a duty to monitor Mutter's actions." (Br. Supp. Mot. 18.) The Court has concluded that Plaintiff has sufficiently pleaded, for Rule 12(b)(6) purposes, a *de facto* fiduciary duty relationship. Likewise, the Court concludes that there are sufficient facts indicating that Vanguard owed a duty to exercise ordinary care when handling Plaintiff's accounts, as alleged in Paragraph 51 of the Complaint.

52.     Vanguard also argues that "there are not even any allegations establishing that [Vanguard] had notice of the facts or circumstances that would demonstrate a

need to monitor Mutter's actions." (Br. Supp. Mot. 18.) The Complaint alleges, however, that Mutter obtained "full agent" status over Plaintiff's accounts by submitting an electronic authorization form, which was sent from an IP address belonging to Mutter, not Plaintiff. (Compl. ¶¶ 19–21.) The Complaint also alleges that "given the amount, timing and frequency of the distribution requests," Vanguard should have verified the IRA Distribution forms submitted by Mutter. (Compl. ¶ 48.) Based on these allegations, the Court finds that Plaintiff has alleged that Vanguard was on notice of Mutter's actions. Accordingly, the Court is not persuaded by Vanguard's argument that Plaintiff has failed to allege the duty element of his negligence claim.

53. The Court next turns to Vanguard's argument that Plaintiff's negligence claim is barred by the economic loss doctrine. North Carolina recognizes this doctrine, which limits a plaintiff's ability to recover in tort for a claim that is rooted in contract law even if the defendant's actions were negligent. *See Spillman v. Am. Homes of Mockville, Inc.*, 108 N.C. App. 63, 65, 422 S.E.2d 740, 741–42 (1992) ("[A] tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to properly perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract."(citation omitted)); *see also Forest2Market, Inc. v. Arcogent, Inc.*, 2016 NCBC LEXIS 3, at *8 (N.C. Super. Ct. Jan. 5, 2016) ("The economic loss doctrine today generally limits recovery in tort 'when a contract exists between the parties that defines the standard of conduct and which

the courts believe should set the measure of recovery.'" (quoting *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *47–48 (N.C. Super. Ct. Nov. 3, 2011))).

54.     Based on this rule, this Court has concluded that "in order to maintain tort claims for conduct also alleged to be a breach of contract, a plaintiff must identify a duty owed by the defendant separate and distinct from any duty owed under a contract." *Forest2Market*, 2016 NCBC LEXIS 3, at *8 (citation and quotation marks omitted).

55.     Therefore, the economic loss doctrine will bar Plaintiff's negligence claim if Vanguard's alleged conduct underlying Plaintiff's negligence claim is also a breach of the alleged agreement between Plaintiff and Vanguard, and Plaintiff fails to identify a separate and distinct duty from Vanguard's alleged contractual obligations. As noted above, Plaintiff alleged that Vanguard owed "a duty of ordinary care to Plaintiff," (Compl. ¶ 51), but goes on to discuss how that duty was breached by Vanguard's failure to perform its obligations under the contract, (Compl. ¶ 52(A)–(F)). Therefore, the Court finds that the Complaint has not alleged a duty separate and distinct from that which is owed under the contract.[3]

56.     However, the economic loss doctrine seems to operate on the premise that there is, in fact, a contract between the parties. In *Forest2Market*, where this Court

---

[3] Plaintiff also argues in his Brief in Opposition that "[e]ven in the absence of a fiduciary duty, a financial institution such as [Vanguard] has an obligation to safeguard its customer's accounts." (Pl. Br. Opp'n 9.) However, the Complaint does not allege this as a duty under tort law. Rather, the Complaint only alleges that Vanguard agreed, through the parties' contract, to safeguard Plaintiff's funds. Based on Plaintiff's allegations, Vanguard's negligent conduct is expressly covered by the contract, which is the exact situation for which the economic loss doctrine prohibits tort recovery.

dismissed the plaintiff's negligence claims that were an "attempt to manufacture a tort dispute out of what is, at bottom a simple breach of contract claim," the parties did not dispute there was a contract between them. 2016 NCBC LEXIS 3, at *12 (citation and quotation marks omitted). In fact, this Court was able to consider the provisions of that contract and determine which provisions covered the negligent conduct alleged. *Id*. at *9. Here, in its briefing,[4] Vanguard denies the existence of the contract Plaintiff alleges in the Complaint.[5]

57.     North Carolina allows a plaintiff to plead claims in the alternative. N.C. Gen. Stat. § 1A-1, Rule 8(e)(2) ("A party may set forth two or more statements of a claim or defense alternatively . . . . A party may also state as many separate claims or defenses as he has regardless of consistency and whether based no legal or on equitable grounds or on both."). Because Vanguard has not yet filed an answer, and because in its briefing on the Motion Vanguard disputes the existence of the alleged contract, the Court concludes that it would be premature to dismiss Plaintiff's negligence claim at this time. While Plaintiff's breach of contract claim and negligence claim are inconsistent with one another and implicate the economic loss doctrine, both are able to go forward. *See Hendrix v. Hendrix*, 67 N.C. App. 354, 357, 313 S.E.2d 25, 27 (1984) (Phillips, J., concurring) ("The main reason for permitting

---

[4] The Court notes that Vanguard has not filed an answer yet, nor would consideration of an answer be proper on the Motion.

[5] Vanguard argues that there were other contracts governing the parties' conduct, and thus even if Vanguard denies the existence of the contract alleged in the Complaint, "there is no dispute that a contract governed [Plaintiff's] relationship and accounts with [Vanguard]." (Reply Br. 9.) However, the Court ruling on a Rule 12(b)(6) motion only considers the allegations in the Complaint, which here alleges a contract between Vanguard and Plaintiff that Vanguard, in its briefing on the Motion, denies exists.

inconsistent claims to be alleged is so that litigants can investigate and assess them before having to decide—or before the court decides for them—which inconsistent claim is supportable and which is not."); *Club Car, Inc. v. Dow Chem. Co.*, 2007 NCBC LEXIS 10, at * 11–12 (N.C. Super. Ct. May 3, 2007) (deferring dismissal of the tort claims on a Rule 12(b)(6) motion because it remained "an open question" whether the plaintiff's negligence actions were covered by the scope of the agreement where the defendant had yet to answer the allegations in the complaint). Accordingly, the Motion, to the extent it seeks dismissal of Plaintiff's negligence claim at this stage, is DENIED.

### D. Violation of the UFA (Count V)

58. Plaintiff's Fifth Claim alleges that Vanguard violated the UFA by allowing Mutter to wrongfully withdraw funds from Plaintiff's account without Plaintiff's permission. With respect to this claim, Vanguard argues that Plaintiff's allegations are insufficient as a matter of law to establish a violation of the UFA. (Br. Supp. Mot. 19.) For purposes of this claim, and because Vanguard has not argued otherwise, the Court assumes that Vanguard is subject to the UFA.

59. Vanguard argues that it cannot be liable to Plaintiff under the facts as alleged because the UFA relaxed the standard of care banks owe to principals when dealing with their fiduciaries. (Br. Supp. Mot. 19.) Under Vanguard's interpretation of the UFA, Vanguard could only be held liable if it actually knew that Mutter was in breach of his fiduciary obligations, or if it was aware of facts that "cogent[ly] and obvious[ly]" indicated Mutter was in breach of his fiduciary obligations such that

Vanguard's conduct, or lack thereof, amounted to bad faith. (Br. Supp. Mot. 19–20 (quoting *Edwards v. Nw. Bank*, 39 N.C. App. 261, 268, 250 S.E.2d 651, 657 (1979)).) Vanguard argues that Plaintiff's allegations regarding Vanguard's actual knowledge of Mutter's actions are conclusory, and that the "factual allegations support only a remote possibility that [Vanguard] *could have known* about Mutter's unauthorized acts," which are wholly insufficient to allege Vanguard acted in bad faith. (Br. Supp. Mot. 19–20.) In response, Plaintiff argues that his allegations are not conclusory, and that whether or not Vanguard acted in "bad faith" is a question for the fact-finder, who could conclude from the allegations that Vanguard's conduct amounted to bad faith under the UFA. (Pl. Br. Opp'n 11.)

60. Section 32-9 of the UFA provides:

> [i]f a check is drawn upon the account of his principal in a bank by a fiduciary who is empowered to draw checks upon his principal's account, the bank is authorized to pay such check without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing such a check, or with knowledge of such facts that its action in paying the check amounts to bad faith.

N.C. Gen. Stat. § 32-9.

61. In support of its position, Vanguard cites to *Danas* and *Beedie v. Associated Bank III., N.A.*, 2011 U.S. Dist. LEXIS 65883, at *6 (C.D. Ill. June 21, 2011). However, the Court notes that both are distinguishable from the instant case. First, in *Danas*, this Court did not address whether the UFA applied to the facts and circumstances of that case. *Danas*, 2012 NCBC LEXIS 40, at *10–11. Second, *Beedie* was a federal case out of the Central District of Illinois that applied its own case law

developing the definition of "bad faith" under Illinois' version of the UFA, and moreover, applied the higher *Twombly-Iqbal* standard for dismissal under Federal Rule 12(b)(6).[6]

62.     Both Plaintiff and Vanguard cite to *Edwards*, where the Court of Appeals held that summary judgment for the defendant bank was inappropriate on a UFA claim.  *See* 39 N.C. App. at 270, 250 S.E.2d at 658.  There, the Court of Appeals interpreted section 32-9's "bad faith" as requiring more than just negligence, but a "deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction."  *Id.* at 268, 250 S.E.2d at 657.  The Court in *Edwards* determined that "bad faith" required some sort of willful behavior.  *Id.* (quoting *Davis v. Pa. Co. for Ins. on Lives & Granting Annuities*, 12 A.2d 66, 69 (Pa. 1940) ("At what point does negligence cease and bad faith begin?  The distinction between them is that bad faith, or dishonesty, is unlike negligence, wilful [sic].  The mere failure to make inquiry, even though there be suspicious circumstances, does not constitute bad faith, unless . . . there is an intentional closing of the eyes or stopping of the ears.")).

---

[6] To survive dismissal under the Federal Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Beedie*, 2011 U.S. Dist. LEXIS 65883, at *4 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The "complaint must state sufficient factual matter . . . to 'state a claim that is plausible on its face' . . . [which requires] the plaintiff [to] plead[] factual content that allows the court to draw a reasonable inference that defendant is liable for the misconduct alleged."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).  "[T]he standard under Federal Rule 12(b)(6) . . . is a different, *higher* pleading standard than mandated under our own General Statutes."  *Fox v. Johnston*, 243 N.C. App. 274, 285, 777 S.E.2d 314, 325 (2015); *see also Holleman v. Aiken*, 193 N.C. App. 484, 490, 668 S.E.2d 579, 584 (2008) ("North Carolina has not adopted the 'plausibility standard' set forth in *Bell Atlantic* for 12(b)(6) Motions to Dismiss.") (citation omitted).

63. Despite articulating this exacting standard for "bad faith" under the UFA, the *Edwards* Court nonetheless determined that a "general denial" of the plaintiff's allegations, where the defendant bank's "state of mind is the essential element" to the plaintiff's claim, failed to establish the requisite standard of certainty to permit summary judgment on the defendant's behalf. *Id.* at 270, 250 S.E.2d at 658.

64. The Court notes that *Edwards* was decided on summary judgment, and even with the benefit of affidavits where the defendant bank denied that it had any knowledge of the fiduciary's breach, the Court still determined that the plaintiff's allegations could support a claim under the UFA making summary judgment for the defendant bank inappropriate. *Id.* Here, where Vanguard has yet to even respond to Plaintiff's allegations, and thus Plaintiff's allegations are deemed admitted for purposes of the Court's analysis, the Court finds that deciding whether or not Vanguard acted in "bad faith" is premature. Plaintiff has alleged that Vanguard's knowledge of the "size, timing, and frequency of transfers from the [Vanguard] retirement account of Plaintiff" is sufficient to show Vanguard's actual knowledge of Mutter's actions or at least amounts to Vanguard's bad faith. (Compl. ¶ 74.) Plaintiff has also alleged that Vanguard issued checks pursuant to the IRA Distribution form submitted to Mutter's personal bank account at Allegacy even though the checks were made payable to "RJM Financial FBO Phillip K. Edwards" and "RJM Financial c/o Phillip Edwards[,]" (Compl. ¶¶ 70–71), and that Vanguard permitted Mutter to obtain "full agent" status through an electronic authorization form submitted from Mutter's computer, (Compl. ¶¶ 20–21). Plaintiff alleged that despite these facts,

Vanguard never notified Plaintiff of changes to his account, nor inquired further into Mutter's actions. (Compl. ¶ 48(G).) These allegations could support a finding that Vanguard had actual knowledge of Mutter's conduct, or "could support a reasonable inference that [Vanguard's] passiveness amounted to a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction." *See Edwards*, 39 N.C. App. at 270, 250 S.E.2d at 657. Therefore, Plaintiff's allegations are sufficient to withstand a motion to dismiss. Accordingly, the Motion is DENIED with respect to Plaintiff's UFA claim.

## VI. CONCLUSION

65. For the foregoing reasons, the Court **DENIES** the Motion.

**SO ORDERED**, this the 21st day of December, 2018.

/s/ Michael L. Robinson

Michael L. Robinson
Special Superior Court Judge
 for Complex Business Cases